UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

D.V., et al.,

      Plaintiffs,

   v.

PENNSAUKEN SCHOOL DISTRICT, et al.,

      Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 12-7646
(JEI/JS)

**OPINION**

**APPEARANCES:**

REISMAN CAROLLA GRAN LLP
By: Amelia Carolla, Esq.
19 Chestnut Street
Haddonfield, NJ 08033
    Counsel for Plaintiff

PARKER McCAY PA
By: Frank P. Cavallo, Jr, Esq.
    Brett E.J. Gorman, Esq.
9000 Midlantic Drive, Ste. 300
Mount Laurel, NJ 08054
    Counsel for Defendant

**Irenas**, Senior District Judge:

    Plaintiffs B.V., individually and on behalf of her grandson D.V., and T.V., individually (the "Plaintiffs"), initiated this action against the Pennsauken School District (the "District") alleging discrimination and retaliation. The Complaint asserts

1

claims against the District arising under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the "Rehabilitation Act"), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 (the "ADA"), 42 U.S.C. § 1983 ("§ 1983"), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX") and New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 ("NJLAD").[1]   Presently before the Court is the District's Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).   For the reasons stated herein, the District's motion will be granted in part and denied in part.

## I.

For the purposes of this Motion, the Court accepts as true the facts as alleged in the Complaint.

D.V. is an eleven year old child with autism, generalized anxiety disorder, and a learning disability in the area of math. (Compl. ¶ 10)   Because of his disabilities,[2] Plaintiffs allege

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

[2] The IDEA defines a child with disabilities as a child:
   (i) with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance, . . . orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, needs special education and related services.

20 U.S.C § 1401(3)(A).

D.V. is entitled to a free and appropriate public education ("FAPE") under the ADA, the Rehabilitation Act, and the Individuals with Disabilities in Education Act (the "IDEA").[3] (*Id.* ¶ 11)

D.V. lives with his paternal grandmother, B.V., who serves as his legal guardian and resides within the District.  (*Id.* ¶ 3)  T.V., who is gay, is D.V's uncle and a public school teacher in New Jersey.  (*Id.* ¶ 4)  T.V., at the request of B.V., assists B.V. in advocating for D.V.'s education rights.  (*Id.*)

For a portion of the 2010-11 school year and the entire 2011-12 school year, D.V. was enrolled in educational programs within the District.  (*Id.* ¶ 12)  During this time period, the District classified D.V. as having only a specific learning disability in math.  (*Id.*)

It was not until January 2011 that B.V. obtained an evaluation revealing D.V.'s autism.  (*Id.*)  Two subsequent evaluations in March and June 2012 confirmed that D.V. has autism.  (*Id.*)

---

[3] Under the Individuals with Disabilities in Education Act ("IDEA"), States must provide a FAPE to children with disabilities.  20 U.S.C. 1412(a); *D.A. v. Pleasantville Sch. Dist.*, 2009 WL 972605, at *4 (D.N.J. 2008).  The statute requires States (and therefore local school districts) to provide each disabled child with an individualized education plan.  20 U.S.C. ¶ 1412(a)(4); *see Pleasantville Sch. Dist.*, 2009 WL 972605, at *4; *see also Holmes ex rel. Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 589 (3d Cir. 2000) (citing 20 U.S.C. § 1401(a)(20)) (stating that "[a]n IEP consists of a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services").

While the Complaint is not clear as to when, at some point B.V. commenced an administrative proceeding for Due Process against the District, claiming that the District failed to provide D.V. with a FAPE for the 2010-11 and 2011-12 school years. (*Id.* ¶ 13)  In these administrative proceedings, B.V. alleged violations of the IDEA, the Rehabilitation Act, and the ADA, and requested that the district provide D.V. with a program "to meet the needs of a student with autism, not only his disability in the area of math." (*See id.;* Def.'s Br. in Supp., at 1)  On August 18, 2011, Plaintiffs met with the District's child study team to request that they revise D.V.'s IEP for the 2011-2012 school year, and asked for more services for him pursuant to the IDEA.  (Compl. ¶ 14)

During the August 18 meeting, the Plaintiffs described many of the behaviors and social skill deficits with which they were concerned, but the District maintained that it had not noticed these behaviors at school.  (*Id.* ¶ 16.)  However, the District did express concerns over D.V.'s hygiene.  (*Id.*)  In response, Plaintiffs explained that D.V. does not notice if he is ungroomed, unclean, or has body odor.  (*Id.*)  In addition, T.V. described that several family members, including T.V., B.V., and D.V.'s grandfather, had all tried to "teach [D.V.] how to wash himself in the shower, to no avail."  (*Id.*)

4

The next day, New Jersey's Division of Youth and Family Services ("DYFS") received several reports from members of the child study team that D.V. was the victim of inappropriate sexual touching by his uncle, T.V. (*Id.* ¶ 17)  The members of the child study team did not report that either grandparent had inappropriately touched D.V. (*Id.* ¶ 19)  DYFS conducted an investigation by interviewing D.V. and his sister as well as conducting a physical examination of D.V. (*Id.* ¶ 17)  The allegations eventually proved to be unsubstantiated. (*Id.*)

Because T.V. is employed with a public school, T.V. met with his school's Superintendent to inform him of the recent, albeit unproven, allegations of sexual abuse. (*Id.* ¶ 20)  In addition, when applying for future teaching jobs, T.V. will need to disclose these allegations. (*Id.* ¶ 21)

On September 23, 2011, B.V. requested another IEP meeting to address continuing concerns regarding D.V.'s behavior and DYFS's visit to her home. (*Id.* ¶ 23)  In addition, B.V. requested the removal of weekly guidance counseling services from D.V.'s IEP as "[B.V and T.V.] were afraid that the District might try to make further accusations against T.V. or other family members." (*Id.*)  These services were removed and subsequently provided by an outside psychologist at the expense of D.V.'s family from 2011-12. (*Id.* ¶ 24)

At some point after the September 23 meeting, additional reports were made to DYFS. (*Id.* ¶ 25) These reports were also found to be unsubstantiated. (*Id.*)

In January 2012, D.V. began reporting to his private therapist that classmates were "physically abusing him and taunting him by calling him names including 'gay.'" (*Id.* ¶ 26) The Complaint is not clear about what happened next. Without providing any dates, the Complaint first alleges that T.V., B.V. and D.V.'s therapist reported the bullying to the District, but the District took no or inadequate action. (*Id.* ¶ 27) Two paragraphs later, the Complaint states that on May 16 and May 17, T.V., B.V., D.V.'s grandfather, and D.V.'s therapist met with the Superintendent, the school psychologist, and several other District employees to discuss the bullying. (*Id.* ¶ 29.) The Court cannot determine whether the May 16-17 meeting is separate from the reports made to the district by T.V., B.V. and D.V.'s therapist, or whether the paragraph in the Complaint detailing the May 16-17 meeting simply provides more detail about the reports referenced earlier in the Complaint.

During the May 16-17 meeting, the school psychologist stated that "it was commonplace for students to call each other 'gay' in D.V.'s class and that D.V. should not get upset about it because this was not a 'big deal.'" (*Id.*) Shortly

6

thereafter, the Superintendent instructed the psychologist to "get out" of the meeting, and to "stop talking now." (*Id.*)

After the meeting, B.V. requested that D.V. be placed on immediate home instruction "because [D.V.] did not feel safe at school," and filed an emergency petition with the Office of Administrative Law. (*Id.* ¶ 30) Consequently, the District provided the requested home instruction; however, the District insisted that the instruction take place at the local library rather than at B.V.'s home. (*Id.*)

In September 2012, B.V. and the District reached an agreement (the "Settlement") to resolve the administrative proceeding for due process and place D.V. in a private special education school. (*See id.* at 33) The Settlement stated that the District would pay D.V.'s tuition, all appropriate services, and transportation to the private special education school for the 2012-13 school year. (Def.'s Mot. to Dismiss Ex. C ¶ 2)[4] The Settlement also included a waiver provision, which provided that:

> Petitioners will waive all claims and forever release
> the District for all claims outlined in the Amended
> Complaint for Due Process including claims under the

---

[4] The Court is allowed to consider the Settlement Agreement in deciding this motion to dismiss because "[i]n evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 360 (3d Cir. 2006) (internal citations and quotations omitted). The Settlement Agreement is incorporated by reference into the Complaint.

>Individuals with Disabilities in Education Act and any
>amendments, if in place, thereto, Section 504 of the
>Rehabilitation Act of 1973, 29 U.S.C. [§] 791 *et seq.*,
>the Americans with Disabilities Act of 1990, 42 U.S.C.
>[§] 2101 *et seq.*, and any regulations promulgated
>under any aforementioned laws, including claims for
>compensatory education, expert fees, counsel fees and
>costs, except for those specifically carved out herein
>under Paragraph 4, from the beginning of time up under
>the date of this Settlement Agreement.
>
>The parties have agreed to "carve out" as an exception
>to the waiver of claims set forth above any claim for
>retaliation including under Section 504 of the
>Rehabilitation Act, the Americans with Disabilities
>Act and 42 U.S.C § 1983.  Those claims are not waived.

(*Id.*)  Under the Settlement Agreement, the District agreed to
reimburse B.V. $25,000 for incurred legal fees and costs.  (*Id.*
at ¶ 5)

Plaintiffs initiated the instant litigation on December 13,
2012 by filing a five count complaint naming the District and
John Does (1-5) as defendants.  John Does (1-5) represent
employees of the District who contacted DYFS.  (Compl. ¶ 6)
Count I of the Complaint alleges that the Defendants reported
T.V. to DYFS in retaliation for B.V. and T.V's advocating on
D.V.'s behalf, in violation of the ADA, the Rehabilitation Act,
and § 1983.  (*Id.* ¶¶ 35-42)  Count II alleges that Defendants
reported T.V. to DYFS because T.V. is gay, in violation of the
NJLAD.  (*Id.* ¶¶ 43-45)  Count III alleges that Defendants
violated D.V. and B.V.'s rights under the NJLAD by
discriminating against D.V. on the basis of his disability.

(*Id.* ¶¶ 47-49)  Count IV alleges that Defendants violated B.V. and D.V.'s rights under Title IX by taking inadequate action to stop the bullying D.V. was experiencing at school.  (*Id.* ¶¶ 50-53)  Lastly, Count V alleges that Defendants violated T.V.'s rights under Title IX by discriminating against him on "the basis of his sexual orientation as a result of advocating" for D.V.  (*Id.* ¶¶ 54-56)  Pending before the Court is the District's Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II.

### A.   The Fed. R. Civ. P. 12(b)(6) Standard

Fed. R. Civ. P. 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

When considering a Rule 12(b)(6) motion, the reviewing court must accept as true all allegations in the complaint and view them in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  However, a court is not required to accept sweeping legal conclusions cast in the form of factual allegations,

9

unwarranted inferences, or unsupported conclusions.  *Morse v.*
*Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The
complaint must state sufficient facts to show that the legal
allegations are not simply possible, but plausible.  *Phillips*,
515 F.3d at 234.  The Third Circuit has outlined a three step
approach for evaluating whether a complaint satisfies the
plausibility standard:

> First, the court must "tak[e] note of the elements a
> plaintiff must plead to state a claim." Second, the
> court should identify allegations that, "because they
> are no more than conclusions, are not entitled to the
> assumption of truth." Finally, "where there are well-
> pleaded factual allegations, a court should assume
> their veracity and then determine whether they
> plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).


**B.    The Fed. R. Civ. P. 12(b)(1) Standard**

Under Fed. R. Civ. P. 12(b)(1), a party may bring a motion
to dismiss for lack of subject matter jurisdiction.  A motion to
dismiss for lack of standing is properly brought pursuant to
Rule 12(b)(1) because standing is a jurisdictional matter.
*Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007).  The Third

Circuit has articulated three requirements for standing under
Article III of the United States Constitution: (1) the plaintiff
must have suffered an injury in fact which is (a) concrete and
particularized and (b) actual or imminent, not conjectural or
hypothetical; (2) there must be a causal connection between the
injury and the conduct complained of – the injury must be fairly
traceable to the challenged action of the defendant and not the
result of the independent action of some third party; and (3) it
must be likely, as opposed to merely speculative, that the
injury will be redressed by a favorable decision. *See D.A. v.
Pleasantville Sch. Dist.*, 2009 WL 972605, at *6 (D.N.J. 2009)
(citing *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts
Inc.*, 140 F.3d 478, 484-85 (3d Cir. 1998)).  Additionally, the
Supreme Court has identified several prudential limitations,
including that "'a plaintiff generally must assert his own legal
rights and interests, and cannot rest his claim to relief on the
legal rights or interests of third parties.'" *Pleasantville*,
2009 WL at *6 (citing *Addiction Specialists, Inc. v. Twp. Of
Hampton*, 411 F.3d 399, 405 (3d Cir. 2005)).

     "In evaluating whether a complaint adequately pleads the
elements of standing, courts apply the standard of reviewing a
complaint pursuant to a 12(b)(6) motion to dismiss for failure
to state a claim." *In re Schering Plough Corp. Intron/Temodar
Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  Thus,

"the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine*, 486 F.3d at 810. Additionally, the same plausibility standard and three step approach which guide the Court in deciding a Rule 12(b)(6) motion apply when deciding a Rule 12(b)(1) motion. *See In re Schering Plough*, 678 F.3d at 243. "With respect to 12(b)(1) motions in particular, the plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . rather than facts that are merely consistent with such a right." *Id.* (internal citations and quotations omitted).

### III.

**A.**

The District initially argues that Plaintiffs' Complaint should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(1) for lack of standing because Plaintiffs have not suffered any damages. (Def.'s Br. in Supp., at 7.) Specifically, the District alleges that "throughout the entire Complaint, neither of the Plaintiffs has demonstrated that they have suffered any damages as a result of the alleged actions of the district." (*Id.*)

This argument is unavailing.  Plaintiffs' Complaint repeatedly alleges that Plaintiffs suffered damages.  For example, in Count I, Plaintiffs allege that "[b]ecause of Defendants' violations of the ADA and the Rehabilitation Act, Plaintiffs have suffered monetary damages, in the form of attorney's fees incurred and lost wages and other incidental expenses."  (Compl. ¶ 38.)  Further, Plaintiffs allege that "[b]ecause of Defendants' violations of the ADA and the Rehabilitation Act, Plaintiffs are entitled to compensatory damages for the physical and emotional distress caused by Defendants' actions."  (*Id.* ¶ 39)  Similar allegations of damages are contained within Counts II, III, IV and V of the Complaint.  (*Id.* at ¶¶ 46, 49, 53, 56)

While the Court does find that these damages are difficult to quantify at this stage, this is no basis for granting a motion to dismiss.  *See Paton v. La Prade*, 524 F.2d 862, 871 (3d Cir. 1975).  "On this abbreviated record, it is not appropriate to decide whether plaintiff . . . could possibly be entitled to damages, and such issues should not be addressed unless and until" this court is faced with a sufficient evidentiary record.  *Id.*  Therefore, the Court will not dismiss the Complaint in its entirety on the basis that the Plaintiffs have not adequately showed they have suffered damages.

**B.**

Count I of the Complaint alleges that the Defendants reported T.V. to DYFS in retaliation for Plaintiffs advocating on D.V.'s behalf. (Compl. ¶¶ 35-42) Count I asserts retaliation claims under the ADA, the Rehabilitation Act, and § 1983.

The elements of a retaliation claim under § 1983 and the Rehabilitation Act are the same. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) ("The elements of a retaliation claim under 42 U.S.C. § 1983 predicated on the First Amendment and under the Rehabilitation Act are the same."). Under these two statutes, to state a claim for retaliation, a Plaintiff must show (1) that he engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action. *Id*. Similarly, under the ADA, to state a claim for retaliation, a Plaintiff must show (1) that he engaged in protected activity; (2) that he was subject to an adverse action either after or contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the adverse action. *Stouch v. Twp. of Irvington*, 354 Fed. Appx. 660, 667 (3d Cir. 2009).

14

In their Complaint, Plaintiffs allege that they engaged in protected activity by participating in an IEP meeting with the District. (Compl. ¶¶ 14, 38) Plaintiffs then allege that the District retaliated against them by reporting to DYFS that T.V. subjected D.V. to inappropriate sexual touching. (*Id*. ¶¶ 17, 38) Lastly, Plaintiffs have pled that the "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory activity establishes a causal link." (*Id*. ¶ 38) Therefore, under all three statutes, Plaintiffs' Complaint plausibly pleads the elements for a retaliation claim.

Nonetheless, the District argues that Count I of the Complaint must be dismissed. First, the District argues that neither B.V. nor T.V. is disabled and, therefore, they do not have standing to bring claims under the ADA, the Rehabilitation Act, or § 1983. (Def.'s Br. in Supp., at 8-10, 14-15) Second, the District argues that Plaintiffs have not adequately pled retaliation because they have "admitted that the alleged information provided to DYFS was accurate." (*Id*. at 13) Lastly, the District argues that it and its employees are entitled to qualified immunity. (*Id*. at 15-17) The Court will address each of these arguments in turn.

The District's standing argument is wide of the mark because it fails to recognize that Plaintiffs' claims under the ADA, the Rehabilitation Act, and § 1983 are retaliation claims,

15

and not discrimination claims.  That a plaintiff actually be disabled is not an element of a retaliation claim.  *See Stouch*, 354 Fed. Appx. at 667 ("A plaintiff need not be 'disabled' under the ADA to prevail on a retaliation claim.")  On the contrary, under all three statutes, a plaintiff need only plead that he engaged in a protected activity in order to satisfy the first element of a retaliation claim.  *See id; Lauren W.*, 480 F.3d at 267.

The Court also finds the District's second argument, that there can be no retaliation because Plaintiffs have admitted that the reports to DYFS were accurate, to be unpersuasive.  In support of this argument, the District relies on *R.K. v. Y.A.L.E. Schools, Inc.*, 621 F. Supp. 2d 188 (D.N.J. 2008).  In *R.K.*, the plaintiff was the mother of a child who suffered from Asperger's syndrome.  621 F. Supp. 2d at 192-93.  The mother believed her child was being mistreated at the defendant school, and threatened to file a civil rights complaint.  *Id.* at 193. In response, the mother alleged that the school board contacted DYFS and made false and malicious reports of sexual abuse perpetrated by the mother against her child.  *Id.* at 193-94. This District held that the mother adequately pled the causation element of a cause of action for retaliation under § 1983 because her "allegation that the Defendants' conduct was initiated maliciously and specifically to retaliate against

16

[her] for engaging in constitutionally protected activity is sufficient to satisfy the causal connection requirement." *Id*. at 198.  Defendants interpret *R.K.* as establishing that "the requirements of a retaliation claim against a School District for reporting a potential instance of abuse to DYFS is that the district reported false, inaccurate and malicious information." (Def.'s Br. in Supp., at 11)

The District's reliance on *R.K.* is misplaced.  In the instant case, it is simply not true that Plaintiffs have admitted that the reports to DYFS were accurate.  On the contrary, the Complaint alleges that Plaintiffs reported at the IEP meeting that several family members, including B.V., T.V, and D.V.'s grandfather, "had all tried to teach [D.V.] how to wash himself in the shower." (Compl. ¶ 16)  The Complaint then alleges that Defendants called DYFS several times and "specifically reported that D.V. was the victim of inappropriate sexual touching by his gay uncle, T.V." (*Id*. ¶ 17)  Further, the Complaint alleges that even after DYFS found these allegations to be unsubstantiated, defendants made subsequent reports which were also found to be unsubstantiated.  (*Id*. ¶ 25) Although Plaintiffs do not explicitly describe the reports to DYFS as false or malicious within their Complaint, nowhere do Plaintiffs admit that D.V. was the victim of inappropriate sexual touching.  Therefore, upon reading the entirety of the

17

Complaint, the "reasonable inference," *see Ashcroft*, 556 U.S. at 678, is that Plaintiffs allege that defendants made false reports to DYFS about T.V specifically to retaliate for Plaintiffs advocating on D.V.'s behalf.  As in *R.K.*, these allegations are "sufficient to satisfy the causal connection requirement" of a retaliation claim.  *See R.K.*, 621 F. Supp. 2d at 198.

Lastly, the District's qualified immunity argument also fails.  Qualified immunity "strikes a balance by permitting a plaintiff to recover for constitutional violations where the governmental officer was 'plainly incompetent or ... knowingly violate[d] the law,' while immunizing a defendant who 'made a reasonable mistake about the legal constraints on his actions.'" *R.K.*, 621 F. Supp. 2d at 196 (citing *Curley v. Klem,* 499 F.3d 199, 206–07 (3d Cir.2007)).  Accepting the facts in the Complaint as true, as the Court must on a motion to dismiss, the Court cannot find that Defendants "made a reasonable mistake about the legal constraints on [their] actions." *Id*.  Instead, the Complaint alleges that Defendants made false reports to DYFS specifically for the purpose of retaliating against Plaintiffs for advocating on D.V.'s behalf.  Such actions cannot be classified as a reasonable mistake. *See id*.  The District may renew its qualified immunity defense upon a motion for summary judgment, when the Court may look beyond the pleadings to the

18

undisputed facts of the case.  *See id.*  However, at this stage, the motion to dismiss must be denied.  *See id.*

**C.**

    Counts II and III of Plaintiffs' Complaint allege claims under the NJLAD.  Count II alleges that T.V. was discriminated against on the basis of his sexual orientation.  Count III alleges that B.V. and D.V. were discriminated against on the basis of D.V.'s disability.  Plaintiffs do not state which section or sections of the NJLAD they assert rights under beyond the general allegation that the District's actions "constitute discrimination . . . and violated [Plaintiffs'] rights under the New Jersey Law Against Discrimination 'LAD,' including but not limited to N.J.S.A. 10:5-1."  (Compl. ¶ 45)  The Court understands these claims to arise under N.J.S.A. 10:5-12(f), as this is the only section of the NJLAD which is at all related to Plaintiffs' claims.

    N.J.S.A. 10:5-12(f) makes it unlawful

> [f]or any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of the race, creed, color, national origin, ancestry, marital status, civil union status, domestic partnership status, sex, gender identity or expression,

19

> affectional or sexual orientation, disability or
> nationality of such person.

A "place of public accommodation" includes "any

kindergarten, primary and secondary school." N.J.S.A.

10:5-5; *see also L.W. ex rel. L.G. v. Toms River Regional*

*Sch. Bd. of Educ.*, 915 A.2d 535, 549 (N.J. 2007) (stating

that the NJLAD "applies universally to 'places of public

accommodation,' a defined term that includes schools

regardless of their source of funding").

Therefore, as to Count II, T.V. has stated a claim

because he alleges that a school district and its agents

discriminated against him by reporting him to DYFS as an

alleged child abuser because of his sexual orientation.

(Compl. ¶¶ 43-45)

Count III of the Complaint, on the other hand, must be

dismissed. Count III, which is brought by B.V.

individually and on behalf of D.V., states only that the

District "discriminated against D.V. based upon his

disability and violated D.V.'s rights under New Jersey's

law against discrimination," and that D.V. and B.V.

suffered damages as a result. (Compl. ¶ 13-14) This

allegation is precisely the form of sweeping legal

conclusion which the Court is not required to accept as

true. *See Morse*m, 132 F.3d at 906.

Further, nowhere within Count III do Plaintiffs identify any allegedly discriminatory actions taken by the District against D.V.  The facts section of the Complaint does not remedy this problem.[5]  The facts provided by Plaintiffs describe a series of meetings between Plaintiffs and the District, administrative proceedings initiated by B.V. against the District, and reports to DYFS made by the District about T.V.  Oddly, the facts contain very little about the District's treatment of D.V., and include no information about what educational programs the District actually provided to D.V.  Absent further guidance from Plaintiffs, the Court and the District are left to guess which conduct, if any, described in the facts section forms the basis of Count III.  Therefore, in regards to Count III, the Complaint does not allege facts that raise a right to relief above the speculative level.  *Twombly*, 550 U.S. at 555.[6]

---

[5] The facts section of the Complaint is incorporated into Count III in paragraph 47, which states that "Plaintiffs re-allege paragrahs 1-46 as though fully set forth herein."  (Compl. ¶ 47)

[6] The District also argues that Count III should be dismissed because in settling the administrative proceeding, B.V. and D.V. waived their rights under the NJLAD.  Under the Settlement, B.V. and D.V. "will waive all claims and forever release the district for all claims outlined in the Amended Complaint for Due Process."  (Def.'s Br. in Supp. Ex. C)  Based on this language, the Court cannot determine at this stage whether B.V. and D.V. have waived all claims, or only those claims outlined in the Amended Complaint for Due Process.  Because NJLAD claims were not outlined in the Amended Complaint for Due Process, the Court does not use the Settlement as a basis for dismissing those claims.

21

**D.**

Count IV of the Complaint alleges that D.V. was subject to pervasive physical and verbal sexual harassment by his fellow classmates, including being called "gay" and that the District was deliberately indifferent towards this harassment in violation of Title IX.  (*See* compl. ¶¶ 51-53)  Similar to Count III, Count IV is brought by B.V. both individually and on behalf of D.V.

The Court will dismiss B.V.'s individual Title IX claim pursuant to Fed. R. Civ. P. 12(b)(1).  Title IX states that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  "On its face, the statutory language of Title IX, applies only to students and participants in educational programs." *Dipippa v. Union School Dist.*, 819 F. Supp. 2d 435, 446 (W.D. Pa. 2011) (citations omitted).  Even "parents of a student whose rights were violated do not have standing to assert personal claims under Title IX, but do have standing to assert claims on the student's behalf." *Id.*  Therefore, B.V., as D.V.'s legal

---

Defendants also argue that B.V. and D.V. have waived their right to relief under Count IV.  For the same reasons as with Count III, the Court does not rely on the Settlement Agreement to dismiss Count IV.

guardian, does not have standing to assert a personal claim under Title IX based on the alleged violation of D.V.'s rights.

B.V.'s Title IX claim on behalf of D.V. will also be dismissed.  Subject to only a few exceptions,[7] Title IX "broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'" *Jackson*, 544 U.S. 167, 173 (quoting 20 U.S.C. § 1681(a)).  Based upon this prohibition, a school district can be held liable for student-to-student sexual harassment in "certain limited circumstances." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999).

In order to be held liable under Title IX for student-to-student sexual harassment, a school district must be "deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650.  Deliberate indifference occurs when a school district official "is advised of a Title IX violation [and] refuses to take action."  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

---

[7] *See* 20 U.S.C. § 1681(a)(1)-(9).

23

In the instant case, Plaintiffs' Complaint alleges that D.V. was the victim of same-sex sexual harassment.[8]  (*See* Compl. ¶ 51)  Whether Title IX's prohibition of severe and pervasive sexual harassment encompasses same-sex sexual harassment is an issue of first impression in the Third Circuit.

In *Oncale v. Sundowner Offshore Serv., Inc.*, the Supreme Court held that same-sex sexual harassment in the workplace was actionable under Title VII if it reached the level of discrimination because of sex.  523 U.S. 75, 82 (1998). Further, the Supreme Court held that such harassment was actionable even if the harasser was not homosexual, stating that "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Id.* at 81.  In reaching this conclusion, the Supreme Court warned that not all harassment "is automatically discrimination because of sex because the words used have sexual content or connotations."  *Id.* at 80.  Instead, "[c]ommon sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable

---

[8] The precise language used in the Complaint is that "the District and its employees violated D.V. and Guardian's rights under Title IX by discriminating against him on the basis of sex, to wit, perceived sexual orientation."  (Compl. ¶ 51)

person in the plaintiff's position would find severely hostile or abusive." *Id.* at 82.

Several courts have extended the Supreme Court's holding in *Oncale* to Title IX. *See Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860 (8th Cir. 2011); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211 (5th Cir. 1998); *Riccio v. New Haven Bd. of Educ.*, 467 F. Supp. 2d 219 (D. Conn. 2006); *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F. Supp. 2d 1081 (D. Minn. 2000). For example, in *Riccio*, the plaintiff's daughter was called derogatory names at school including "bitch," "dyke," "freak," "lesbian" and "gothic." 467 F. Supp. 2d at 222. Plaintiff's daughter was also subjected to physical abuse by her classmates. *Id.* at 223. Plaintiff initiated a Title IX claim on her daughter's behalf, and the defendant board of education argued that the claim should be dismissed because much of the harassment concerned sexual orientation rather than gender. The United States District Court for the District of Connecticut rejected this argument, stating that based on *Oncale* "it is not difficult . . . to conclude that a school-based scenario in which a female student harasses another female student, using sex-specific, derogatory language, could be from a general hostility toward female students, and as such is an actionable claim." *Id.* at 225.

The Court finds the reasoning in *Riccio* to be very persuasive.  Nonetheless, even accepting that Title IX encompasses same-sex sexual harassment, the Court must dismiss Count IV because Plaintiffs have not adequately pled deliberate indifference.  Although the Complaint states the conclusion that "Defendants exhibited deliberate indifference to the acts and omissions of D.V.'s peers," it does not include sufficient facts to make this conclusion plausible.

As stated earlier, a school district is deliberately indifferent when it "is advised of a Title IX violation [and] refuses to take action."  *See Gebser*, 524 U.S. at 290; *see also Davis Next Friend* 526 U.S. at 643.  Thus, deliberate indifference requires "actual knowledge."  *See Davis Next Friend*, 526 U.S. at 650.  Based on the Complaint, the Court cannot determine whether the District had actual knowledge.  While the Complaint does assert that "T.V., B.V., and D.V.'s therapist reported these allegations to the District," it does not state when, or to whom, these reports were made.  (*See* Compl. ¶ 27)  The only dates associated with any report to the District of bullying is that on May 16 and 17, 2012, Plaintiffs had a meeting with the superintendent and a school psychologist to discuss the bullying.  (*See* Compl. ¶ 29)  However, by May, D.V. had already stopped attending school, so this meeting would not have put the District on notice of the bullying while the

bullying was still ongoing.  (*See* Compl. ¶ 28)  Moreover, at some point shortly after this meeting, the District took action by providing home instruction to D.V. (*See* Compl. ¶ 30) Therefore, the Court cannot conclude based on this meeting that the District had actual knowledge of the alleged harassment or that the District refused to take action.

**E.**

In Count V of the Complaint, T.V. alleges his own Title IX claim against Defendants.  T.V. claims that "[t]he District and its agents reported T.V. to DYFS as an alleged abuser of children without cause and due only to his sexual orientation as a result of his advocating for his nephew, D.V." (Compl. ¶ 55) Based on this language, the Court cannot determine whether the basis of T.V.'s Title IX claim is discrimination on the basis of his sexual orientation, or retaliation for advocating on T.V.'s behalf.  In either case, the Court will dismiss Count V.

To the extent that T.V. asserts a discrimination claim under Title IX, his claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  As already explained in regards to B.V.'s individual Title IX claim in Count IV, "[o]n its face, the statutory language of Title IX, applies only to students and participants in educational programs." *Dipippa v. Union School Dist.*, 819 F. Supp. 2d 435, 446 (W.D. Pa. 2011) (citations

omitted).  Thus, even "parents of a student whose rights were
violated do not have standing to assert personal claims under
Title IX, but do have standing to assert claims on the student's
behalf." *Id.*

T.V. is clearly not a student, and he does not allege that
he is a participant in any educational program.  *See id*.  In
fact, T.V. does not allege that he would even be entitled to
participate in any educational programs or activities offered by
the District.  Lastly, it is undisputed that T.V. is not a
parent or guardian bringing claims on behalf of a student in the
District.  Rather, T.V. is the uncle of a student alleging that
the District directly discriminated against him on the basis of
his sexual orientation.  The Court is aware of no case holding
that an individual in T.V.'s position has standing to bring a
Title IX claim.  Therefore, to the extent that Count V alleges
the District discriminated against T.V. on the basis of his
sexual orientation, it must be dismissed.

In so far as T.V.'s claim is for retaliation under Title
IX, it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).
T.V. is correct that an advocate does have standing to bring a
retaliation claim under Title IX. *Jackson*, 544 U.S. at 176.
However, to prevail on a retaliation claim under Title IX, T.V.
must "prove that the [District] retaliated against him *because*

28

he complained of sex discrimination." *Jackson*, 544 U.S. at 184.
(emphasis in original).

In the instant case, T.V. alleges retaliation based on his
advocating for D.V.  (*See* Compl. ¶ 55)  T.V.'s advocacy,
however, was not to complain about sex discrimination, but to
advocate for D.V.'s educational rights as a student with autism.
Retaliation for this form of advocacy is not a recognized cause
of action under Title IX.

### IV.

For the foregoing reasons, the District's Motion to Dismiss
will be granted in part and denied in part.  It will be granted
as to Counts III, IV and V of the Complaint, and denied as to
Counts I and II.  Plaintiffs will be granted leave to file a
motion to amend the Complaint within thirty days of this
Opinion. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245
(3d Cir. 2008) (holding that district courts "must permit a
curative amendment unless such an amendment would be inequitable
or futile").  An appropriate Order will accompany this Opinion.


Date: August __7__, 2013


                                    __   s/Joseph E. Irenas_____
                                    **Joseph E. Irenas, S.U.S.D.J.**

29