[Doc. No. 193]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

D.V., *by and through his Guardian B.V.*, et al.,

                    Plaintiffs,

    V.

PENNSAUKEN SCHOOL DISTRICT, et al.,

                    Defendants.

Civil No. 12-7646 (JS)

## OPINION

This Opinion addresses whether plaintiffs present a viable cause of action that they were retaliated against because of their educational advocacy on behalf of D.V., a minor, and whether D.V.'s claim for sexual orientation bullying is actionable. The answer to both these questions is no. Summary judgment will therefore be entered in favor of defendants.[1]

Background

The Court will start this Opinion by providing a summary of the background facts. As required in the present context, plaintiffs will be given the benefit of all reasonable

---

[1] This matter is before the Court on the Motion for Summary Judgment filed by defendants Pennsauken School District ("District") and Ms. Marty DeLape ("DeLape") [Doc. No. 193]. The Court received plaintiffs' response [Doc. No. 199], the moving defendants' reply [Doc. No. 205], and recently held oral argument.

inferences from the facts of record and the evidence will be viewed in the light most favorable to plaintiffs.

Plaintiffs filed their complaint on December 13, 2012. On August 7, 2013, the Honorable Joseph E. Irenas (S.U.S.D.J.), granted in part and denied in part defendants' motion to dismiss. [Doc. Nos. 23, 24]. Plaintiffs' amended complaint was filed on September 21, 2013. [Doc. No. 33]. The named plaintiffs in the complaint are D.V., by and through his Guardian, B.V., B.V. individually, and T.V.[2] D.V. is presently a 16 year old male with a learning disability and autism. At the relevant time of the events giving rise to this lawsuit D.V. was approximately 9 years old. D.V. lives with his paternal grandmother and legal guardian, B.V., and his grandfather. T.V. is D.V.'s uncle and is gay. At all relevant times T.V. acted as an educational advocate for D.V. with the District. The claims in the case arise out of plaintiffs' educational advocacy and alleged sexual orientation bullying of T.V.

At the relevant time giving rise to the claims in this lawsuit D.V. lived within the boundary of the District. Also at the relevant time defendant Ms. Marty DeLape ("DeLape") was the District's Director of Special Education, defendant Chris Lavell ("Lavell") was D.V.'s case manager, and defendant Holly Taylor

---

[2] On May 6, 2016 [Doc. No. 183], the Court granted plaintiffs' counsel's motion to withdraw as to T.V. and severed and stayed T.V.'s claims from those of B.V. and D.V.

("Taylor") was a District social worker. Lavelle and Taylor were members of D.V.'s child study team ("CST").[3]

Although D.V. attended District programs for all or part of the 2010-11 and 2011-12 school years, B.V. and T.V. were not satisfied with the services provided. B.V., T.V. and D.V.'s grandfather met with the District's CST at what turned out to be a key August 18, 2011 meeting. The purpose of the meeting was to address D.V.'s Individualized Education Plan ("IEP"). C. Lavell Dep. at 32. Apart from D.V.'s IEP, however, another issue discussed was D.V.'s hygiene and body odor. Plaintiffs acknowledged that D.V. did not have adequate self-grooming habits and did not know if he was ungroomed, unclean, or had body odor. However, B.V. and T.V. explained they tried to help D.V. with his grooming habits without success. At the meeting T.V. told the attendees he had gotten into the shower three times with D.V. and showed him how to wash. It was also mentioned there was an incident with D.V. where he was approached by men in a truck who asked D.V. to ask people if they wanted their lawns cut.[4]

The day after the August 18, 2011 meeting Taylor and Lavelle called the New Jersey Division of Youth and Family

---

[3] Lavelle and Taylor's motion for summary judgment [Doc. Nos. 191, 194] are being addressed in a separate Order. Their motion will be granted for the same reasons expressed herein.
[4] The Court agrees with plaintiffs that the truck incident is irrelevant to defendants' motion.

Services ("DYFS"). Although not completely clear what exact words were used, it was mentioned during the call that T.V. relayed at the IEP meeting that he went into the shower with D.V. Again, giving plaintiffs the benefit of all reasonable inferences from the evidence, Lavelle mentioned T.V. was gay. (or words to this effect) and lived with his partner. J. Owen Dep. 12:2-9; 19:1-15; 30:23-31:10; 36:2-8; C. Lavell Dep. 76:7-16; H. Taylor Dep. 93:4-22. After initially being told by the DYFS phone screener that DYFS would take no further action because what was relayed did not constitute abuse, Taylor and Lavelle called DYFS back and told DYFS the CST was unhappy with the decision not to take further action. After the second phone call DYFS changed its position and decided to investigate the matter.[5] Thereafter, DYFS visited D.V.'s home to investigate whether D.V. was subject to inappropriate touching by T.V. DYFS's investigation concluded that nothing untoward had occurred.

Turning to the second main focus of plaintiffs' claims, the bullying directed to D.V., there is a fairly good "paper trail"

---

[5] Taylor and Lavelle testified they did not make a second call to DYFS. However, this is inconsistent with DYFS's records. As noted, all reasonable inferences from the evidence will be drawn in plaintiffs' favor and the evidence will be viewed in the light most favorable to plaintiffs. Further, since Lavell wrote to her union on September 6, 2012 that "three people participated in the phone call to DYFS," a fact question exists as to whether DeLape was on the first and/or second call to DYFS. See Plaintiffs' Response to Defendants' Statement of Facts ("Plaintiffs' Response") at ¶19.

regarding plaintiffs' complaints to the District about D.V's bullying and the District's responses. The relevant events took place from January to May, 2012. Starting on or about January 20, 2012, plaintiffs complained that D.V. was bullied at school. T.V. Dep. Exh. 18. The same day D.V.'s principal, Dr. Anne Morris ("Morris"), wrote back to T.V. and indicated she would investigate the complaint. Id. Exh. 19; T.V. Dep. 240:24. T.V. wrote to Dr. Morris on January 27, 2012 to thank her for meeting with T.V. so promptly about his letter. T.V. Dep. 242:16 to 242:22. Thereafter, additional correspondence concerning bullying was exchanged between and amongst T.V., Morris, plaintiffs' counsel, Amelia Carolla, Esquire, and T.V.'s psychiatrist, Dr. Bruce Banford.

Plaintiffs made four general bullying complaints, only one of which related to D.V.'s sexual orientation.[6] First, plaintiffs complained D.V. was bullied by his classmate(s). The District's prompt investigation could not corroborate the claim and also determined that T.V. was friends with at least one of the alleged bullies (A.N.). In connection with this investigation the District performed a timely Harassment/Intimidation/Bullying ("HIB") investigation and assessment that concluded there was no indication of HIB behavior from D.V.'s teachers, assistant principal or students interviewed. T.V. Exh. 23; Defendants'

---

[6] D.V. does not identify as being gay. Dep. of D.V. 41:20 to 42:1.

Exhs. G, H.[7] Plaintiffs' Response at ¶40. Second, plaintiffs complained about a balance due in the cafeteria. However, it turned out there came to be a zero balance. T.V. Dep. Exh. 26. Further, even though D.V. testified that on occasion he gave away lunch money, D.V. never missed a school lunch when he wanted one. T.V. Dep. 247:22 to 248:4; D.V. Dep. 49:23 to 50:2. Third, plaintiffs complained about D.V.'s seat placement in a class. Almost immediately D.V.'s seat was changed. Four, plaintiffs complained D.V. was called gay in class. It was alleged that several students circled D.V. and called him "gay" while the teacher was out of the room. T.V. Dep. 269:5 to 270:8.[8] The District's HIB investigation did not corroborate that the incident occurred.

In May 2012, plaintiffs pulled D.V. out of school because they did not feel safe. Thereafter, the District met with plaintiffs on May 16 and 17, 2012, in an effort to get D.V. to return to school. During the meeting the District agreed to additional services such as a three point checklist, daily check-ins, reports to the family, an agreement that D.V.'s therapist would become his counselor, and more support when D.V.

---

[7] The HIB investigation is required under the New Jersey Anti-Bullying Law, N.J.S.A. 18A:37-15. Plaintiffs did not appeal the District's conclusions even though they had a right to do so under the Anti-Bullying statute.

[8] Plaintiffs also complained D.V. was tripped. T.V. Dep. Exh. 26.

was in gym. Plaintiffs' Response at ¶51. Ultimately the District agreed to place D.V. in another school.

Also at the May 16, 2012 meeting a school psychiatrist in attendance allegedly made some comments that infuriated plaintiffs. Viewing the evidence in the light most favorable to plaintiffs, the psychiatrist stated in plaintiffs' presence that students commonly call each other gay, they act like typical 5th and 6th graders when they use this language, and plaintiffs should not be upset by the language used. B. Birnbaum Dep. 77:14 to 79:23, Dep. Exh. 8; T.V. Dep. Exh. 25. Thereafter the school psychiatrist was asked to leave the meeting.

Also of note is the fact that on May 23, 2012, B.V. filed a petition with the New Jersey Office of Administrative Law requesting emergent relief for home services. In September 2012, B.V. and the District came to an agreement to resolve the question of D.V.'s placement at a private special education school. The agreement was memorialized in a Settlement Agreement wherein the petitioners waived their right to sue the District except for a carve out for retaliation claims.

Plaintiffs' complaint generally alleges the District contacted DYFS in retaliation for their advocacy on behalf of D.V. Plaintiffs also complain the District did not appropriately respond to "sexual orientation" bullying directed to D.V.

Plaintiffs' complaint consists of five Counts. As directed to the District, B.V. and D.V. assert a retaliation claim under Title II of the Americans with Disabilities Act, 42 U.S.C. §1213 ("ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. §794, and 42 U.S.C. §1983 (First Amendment)(Count One). Also as to the District, D.V. asserts a New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 sex discrimination claim (Count Three), a NJLAD retaliation claim (Count Four), and a Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 ("Title IX") discrimination claim (Count Five).[9] As directed to DeLape, B.V. and D.V. assert a retaliation claim under the ADA, Rehabilitation Act and §1983 (Count One), and a NJLAD retaliation claim (Count Four). As to DeLape, plaintiffs' concede there is no individual liability under the Rehabilitation Act and the ADA. Brief at 1. However, they are still pursuing their §1983 retaliation claim against DeLape.

The District and DeLape contest all liability allegations. The defenses of the District and DeLape essentially mirror each other. They are: (1) "there is no evidence that the District or any Defendant took any action toward B.V. and D.V. and [plaintiffs] certainly cannot demonstrate any 'adverse action' or that B.V. or D.V. suffered any negative impact" (Brief at 9); (2) D.V. did not engage in any constitutionally protected act;

---

[9] D.V.'S claims are asserted by his grandmother and guardian, B.V., on his behalf.

(3) the District is entitled to qualified immunity; (4) the District is entitled to statutory "good faith" immunity; (5) plaintiffs cannot establish a viable hostile educational environment claim because D.V. is not a protected class, the alleged bullying was not severe or pervasive, and the District reasonably addressed the alleged bullying; (6) the District did not act with deliberate indifference under Title IX; (7) the Title IX claim was previously dismissed; (8) Title IX does not extend to same sex harassment; and (9) plaintiffs waived all claims under the NJLAD and Title IX. In their reply brief defendants also argue DYFS's records are inadmissible and should not be considered by the Court.

In response to defendants' motion plaintiffs generally argue: (1) there is a question of fact as to whether defendants retaliated against them by making an unwarranted report to DYFS about T.V.; (2) fact questions preclude qualified immunity; (3) fact questions preclude defendants' alleged "absolute immunity" defense; and (4) fact questions exist as to whether the bullying directed to D.V. was severe or pervasive and whether the District responded appropriately.

Discussion[10]

---

[10] The Court rejects defendants' argument that DYFS's records are inadmissible hearsay that should not be considered. See Defendants' Reply Brief at 4, Doc. No. 206. On February 21, 2013 [Doc. No. 15] the Court issued an Order to DYFS directing DYFS to release to the Court for its in camera review DYFS's

1.   <u>Summary Judgment Standard</u>

A court should grant summary judgment when the record demonstrates "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could find for the non-moving party on an issue affecting the outcome of the litigation.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  To determine if a material fact exists a court must view the evidence in the light most favorable to the non-moving party.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Id.</u> at 255.

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact.  <u>See</u> <u>Celotex</u>, 477 U.S. at 323.  The burden then shifts to the non-moving party to

records concerning D.V. On March 21, 2013, the Office of the Attorney General, Department of Law and Public Safety, Division of Law, produced its records to the Court. The Court reviewed the records and on April 26, 2013 [Doc. No. 19] produced to counsel the relevant records concerning the events at issue. Given that the records were produced by DYFS in response to the Court's Order, the Court finds that plaintiffs satisfy the hearsay exception and the records may be considered by the Court. <u>See</u> Fed. R. Evid. 803(6), (8) and 807. Further, Jared Owen, DYFS's employee who investigated D.V.'s situation after the District's phone calls, authenticated at his deposition most of the records relied upon by plaintiffs. <u>See</u> <u>generally</u> Dec. 15, 2015 Dep. of J. Owen.

identify specific facts that contradict those of the moving party.  See Anderson, 477 U.S. at 256.  If the non-moving party comes forward with "specific facts showing that there is a genuine issue for trial," such that a jury may return a verdict in his favor, summary judgment must be denied.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A mere "scintilla of evidence," without more, does not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252.

2.   Retaliation Claim as to the District and DeLape
     (Count One)

The Court will first address the retaliation claims made against the District and DeLape in Count One. Plaintiffs B.V. and D.V. allege they were retaliated against because of their advocacy of D.V.'s educational program. The alleged retaliatory action was the unwarranted reporting of T.V. to DYFS.

The elements of a retaliation claim under §1983 and the Rehabilitation Act are the same. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). The elements are: (1) the plaintiff engaged in a protected activity, (2) defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) there was a causal connection between the protected activity and the retaliatory action. Id. The elements of a retaliation claim under the ADA are similar: (1) the plaintiff engaged in a

protected activity, (2) that he was subject to an adverse action either after or contemporaneous with the protected activity, and (3) there was a causal connection between the protected activity and the adverse action. <u>Stouch v. Twp. of Irvington</u>, 354 Fed. Appx. 660, 667 (3d Cir. 2009)(citing <u>Williams v. Phila. Hous. Auth. Police Dept.</u>, 380 F.3d 751, 759 (3d Cir. 2004)).

Summary judgment will be entered in favor of the District and DeLape on plaintiffs' retaliation claims under the Rehabilitation Act, ADA and §1983. Even if B.V. and D.V. satisfy the first two elements of a retaliation claim against the District and DeLape under the Rehabilitation Act, the ADA and §1983, their retaliation claims against the District and DeLape still fail.[11] This is so because there was no causal connection between the alleged protected activity, the educational advocacy on behalf of D.V., and the alleged retaliatory act, the calls to DYFS complaining about T.V.[12] The Court finds there are no facts in the record from which a jury could reasonably find a causal connection between the calls to DYFS and plaintiffs' advocacy on behalf of D.V. Instead, the jury cannot help but find that the

---

[11] Plaintiffs concede there is no individual liability under the Rehabilitation Act and the ADA. Plaintiffs' Brief in Opposition to Motions for Summary Judgment at 3. [Doc. No. 199]. However, plaintiffs are still pursuing a claim against DeLape under §1983.
[12] The Court makes it clear that this Opinion does not address T.V.'s claims which have been severed and stayed. Further, even if plaintiffs merely have to show that their individual advocacy was a "motivating factor" for defendants' calls to DYFS, summary judgment would still be entered for defendants.

calls to DYFS were made because of defendants' good faith, albeit mistaken belief, that D.V. might have been abused or improperly supervised.[13]

It is conceded that D.V. had hygiene problems, that this was discussed at the August 18, 2011 meeting, and that T.V. asked for assistance regarding D.V.'s hygiene at home. Dep. of B.V. 14:15-18; Dep. of T.V. 183:17-20. Thus, plaintiffs, not defendants, raised the hygiene issue. Further, the audiotape of the August 18, 2011 meeting confirms that T.V. stated he had "gotten into the shower three times now [with D.V.] and have showed him how to wash…[.]" Id. 19:16-19; Dep. of T.V. 186:10-24. B.V. and T.V. confirmed this was said. Id. 20:2-6. Even T.V. admits he told the CST that on three occasions he got into the shower with D.V. T.V. Dep. 315:12-17. Lavelle and Taylor

---

[13] Although there is no need to formally decide the issue, plaintiffs present colorable arguments why B.V. and D.V. may be able to show they were engaged in protected activity and they were retaliated against. (The Court is not making a finding of fact as to these matters). Defendants apparently concede that B.V.'s educational advocacy was a protected activity. Further, as a minor D.V. was acting through B.V. at the August 18, 2011 meeting. In addition, although the calls to DYFS were directed to T.V.'s conduct, because of T.V.'s close relationship and nexus to B.V. and D.V., a factfinder may find the alleged retaliatory action directed against T.V. could have been intended to also be directed to B.V. and D.V. B.V. and D.V. may be retaliated against even though the alleged retaliatory conduct was not directed to them personally. See Thompson v. North American Stainless, LP, 562 U.S. 170 (2011)(Title VII does not preclude a retaliation claim filed by an employee whose fiancé filed a discrimination claim).

13

testified they called DYFS because of their concerns about D.V., not because of plaintiff's educational advocacy.

The record being what it is, the Court finds there is no fact question that Lavelle and Taylor had a legitimate concern about an adult getting into the shower with a 9 year old mentally challenged child three times and showing him how to wash, including his private parts. Based on these facts (and others to be discussed) no jury could reasonably find there was a causal connection between plaintiffs' educational advocacy and the calls to DYFS.[14] This is especially true given that school districts are required to give notice to appropriate law enforcement and child welfare authorities when a <u>potential</u> abused child situation is detected. <u>See</u> N.J.S.A. 18A:36-25 (emphasis supplied); <u>see also</u> N.J.S.A. 9:6-8.10 ("Any person having reasonable cause to believe that a child has been subjected to child abuse or acts of child abuse shall report the same immediately to the Division of Child Protection and Permanency by telephone or otherwise").[15]

---

[14] The Court equates a "reasonable" jury with a "rational" jury.
[15] The Division of Child Protection and Permanency is the successor to DYFS. Further, judgment in defendants' favor on plaintiffs retaliation claim is also justified by N.J.S.A. 9:6-8.13 which provides for immunity for "any liability, civil or criminal" for school district employees who report <u>potential</u> <u>abuses</u> to DYFS. (emphasis supplied). This immunity applies when, "a reasonable person would have reasonable cause to believe that a child has been abused." <u>Melleady v. Blake</u>, C.A. No. 11-1807 (NLH/KMW), 2011 WL 6303245, at *17 (D.N.J. Dec. 15, 2011)(citation and quotation omitted). For the purpose of

The conclusion that a jury cannot find a casual connection between plaintiffs' advocacy and the calls to DYFS is also furthered by the fact that plaintiffs have not shown defendants had any animosity towards plaintiffs because of their advocacy. See Lauren W. ex rel. Jean W., 480 F.3d at 267 (one way a casual connection may be shown is by a pattern of antagonism coupled with timing). Plaintiffs do not cite to any facts to support an inference that defendants were antagonistic towards them. This cannot be assumed merely because plaintiffs advocated for D.V. and the parties did not always agree. T.V.'s belief as to why the calls to DYFS were made is pure speculation. To defeat summary judgment plaintiffs must rely on more than pure conjecture and speculation. Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010)(citation omitted).

Plaintiffs' arguments do not carry the day. Although T.V. admits he said what he said about getting into the shower with D.V. and showing him how to wash, T.V. testified he did not mean what he said. Dep. of T.V. 315:12-19. T.V. testified he meant to say he went into the bathroom while D.V. showered and stayed out

---

plaintiffs' retaliation claim, plaintiffs have not presented facts to support a reasonable jury finding that the decision to call DYFS about T.V. was anything but objectively reasonable. See L.A. v. N.J. Div. of Youth and Family Services, 217 N.J. 311, 327-28 (2014)(the "reasonable cause to believe" standard that a child has been subjected to actual or potential child abuse requires that the actions of the person on the scene be objectively reasonable given the facts and circumstances known to that person). This certainly occurred here.

of the shower. Id. at 188:2-5. Nevertheless, defendants could not read T.V.'s mind. Even if after the fact T.V. testified he did not mean what he said, T.V. told defendants he got into the shower with D.V. three times and showed D.V. how to wash. Based on these facts a jury cannot help but find this created a reasonable, but ultimately mistaken belief, that potential abuse took place.

Plaintiff's other arguments are also not convincing. Plaintiffs argue because of the temporal proximity of the August 18, 2011 meeting and the calls to DYFS a fact question exists as to the reason the calls to DYFS were made. However, the mere fact that an adverse action occurs soon after alleged protected activity is not sufficient in and of itself to satisfy the burden of showing a causal link. Young v. Hobart West Group, 385 N.J. Super. 448, 466-67 (App. Div. 2005). Only where the facts of a particular case are "unusually suggestive of retaliatory motive" may temporal proximity on its own establish the necessary causation link. Id. at 467. Here, the temporal proximity evidence is not unusually suggestive because of T.V.'s comments at the August 18, 2011 meeting. These comments justified defendants' first call to DYFS.

The decision in Epps v. Lidestri Foods, Inc., C.A. No. 11-3517 (NLH/AMD), 2013 WL 1222660, at *6 (D.N.J. March 25, 2013) is instructive. In Epps the Court held that it must examine

temporal proximity allegations in the context in which they arise. "While Plaintiff may be correct that the casual link inquiry begins with the temporal proximity of the emails in question, the inquiry does not end there." Id. The Court must look at the context in which the temporal proximity occurred. Id. at **6-7. As noted in Epps:

> Because temporal proximity alone is inadequate to establish the required causal link, the Court cannot scrutinize allegations of retaliation in isolation—looking strictly at the hands of the clock or the days on the calendar. Rather, the Court must examine these allegations in the context within which they arose.

Id. at *6. For the reasons discussed, in this case temporal proximity alone is inadequate to establish a fact question regarding the requirement that plaintiffs show a causal connection between plaintiffs' educational advocacy and the calls to DYFS.

Plaintiffs also argue a fact question exists as to the retaliatory motivation for the DYFS phone calls because no one expressed concern to plaintiffs at the August 18, 2011 meeting that T.V. assisted D.V., Lavelle and Taylor did not call DYFS immediately after the meeting, someone from the CST called DYFS back after DYFS first decided to take no action, and someone from the CST is lying about making a second call. None of these arguments permits a reasonable juror to infer that the calls to DYFS were motivated by an intent to retaliate against plaintiffs for their educational advocacy of D.V. Defendants

had no duty to question plaintiffs further at their meeting. After all, the purpose of the meeting was to address D.V.'s IEP, not T.V.'s conduct. In addition, the fact that the calls to DYFS were made on August 19, 2011 does not demonstrate a nefarious intent since DYFS was called the next day. Taylor testified she wanted to take time calling DYFS to make sure the call was justified. Dep. 71:21 to 72:5. Lovell testified she wanted to review the audiotape of the meeting to make sure she remembered events accurately. Dep. at 58. Defendants should not be penalized for taking a short time to reflect on the appropriateness of their decision to call DYFS. Indeed, if the calls were made on August 18 plaintiffs would likely argue defendants "jumped the gun" without proper reflection. Therefore, it is immaterial to the current discussion that DYFS was called on August 19 rather than August 18. Further, as will be discussed infra, while the second call to DYFS is relevant to T.V.'s sex discrimination claim, it is not determinative to plaintiffs' retaliation claim. The fact that a second call was made to DYFS does not indicate the call was made for a retaliatory reason. If anything, the second call is relevant to T.V.'s discrimination claim. Last, the fact that defendants could not recall making the second call to DYFS is irrelevant to why they called DYFS. Even if defendants are not telling the truth about making the second DYFS phone call, this is not

evidence that they called DYFS for a retaliatory reason. In sum, the record simply does not support plaintiffs' retaliation claim and judgment will be granted in defendants' favor on the claim.[16] [17]

### 3. NJLAD Sex Discrimination Claim as to the District (Count Three)

B.V., on behalf of D.V., alleges in Count Three of the amended complaint that the District discriminated against D.V. on the basis of his perceived sexual orientation. It is alleged the District knew or should of known of the harassment or bullying directed to D.V. but failed to take appropriate action to end the harassment.

In L.W. ex rel. L.G. v. Toms River Regional Schools Bd. of Educ., 189 N.J. 381 (2007), the New Jersey Supreme Court held that the NJLAD recognizes a cause of action against a school district for student-on-student sexual orientation harassment. A school district is liable for this harassment if the district knew or should have known of the harassment but failed to take action reasonably calculated to end the mistreatment and

---

[16] It is not insignificant that it is undisputed defendants did not relay to DYFS statements about any sexual or inappropriate touching, gratification or abuse. The record does not reflect that DYFS was told anything other than what T.V. stated at the August 18, 2011 meeting. Defendants, therefore, did not exaggerate or fabricate any facts which is some evidence they did not intend to retaliate against plaintiffs but instead were concerned about D.V.'s welfare.

[17] Since the Court does not find there was a violation of plaintiffs' constitutional rights, there is no need to address DeLape's qualified immunity defense.

offensive conduct. A plaintiff's claim is only actionable if the District's failure to reasonably address the harassment has the effect of denying to the student any of a school's "accommodations, advantages, facilities or privileges." Id. at 402. However, "isolated schoolyard insults or classroom taunts" are not actionable. Id. To be actionable in the educational context "an aggrieved student must allege discriminatory conduct that would not have occurred 'but for' the student's protected characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment and that the school district failed to reasonably address such conduct." Id. at 402-03. Liability is not strict. Id. at 407. Further, the reasonableness of a District's response to peer harassment must be considered in light of the totality of the circumstances. Id. at 408.

Although the bullying that D.V. allegedly experienced was unfortunate, the Court still concludes that judgment must be entered in the District's favor on D.V.'s NJLAD sex discrimination claim. As noted in L.W. ex rel. L.G., isolated insults or classroom taunts are not actionable. 189 N.J. at 402. Further, to be actionable it must be shown that a reasonable student of the same age or maturity would consider the insults

sufficiently severe or pervasive to create an intimidating, hostile or offensive school environment. Id. at 402-03. The test is an objective one, not a subjective one. See Godfrey v. Princeton Theological Seminary, 2007 WL 1412095, at *7 (App. Div. May 15, 2007).

Although any sexually oriented taunts or insults are unacceptable, the fact of the matter is that D.V. only experienced this on one or possibly two occasions.[18] This is the sort of isolated insults that are not actionable. The New Jersey Supreme Court has made it clear there is no strict liability for sexual orientation bullying. Id. at 407. ("Because we do not create a strict liability standard, a district is not compelled to purge its schools of all peer harassment to avoid liability. Rather, we require school districts to implement effective preventative and remedial measures to curb severe or discriminatory mistreatment"); see also Grazioli v. Genuine Parts Co., 409 F. Supp. 2d 569, 577 (D.N.J. 2005)(citation and quotation omitted)(indicating that a few isolated incidents do not suffice under Title VII and the NJLAD to make out a cause of action); King v. City of Phila., 66 Fed. Appx. 300, 305 (3d Cir. 2003)(finding that two "isolated and sporadic incidents … do not

---

[18] B.V. testified she also heard students calling D.V. gay at a bus stop. B.V. Dep. 78:15 to 80:6. However, this incident was not brought to the District's attention.

demonstrate the pervasive atmosphere of harassment required to prove a Title VII violation").

Apart from the fact that the sexual orientation bullying of D.V. was isolated, it was not so severe or pervasive to be actionable. This is evidenced by D.V.'s testimony that the bullying does not bother him today. D.V. Dep. 51:22-24. Further, D.V.'s April 25, 2012 psychiatric report, which was completed in the midst of plaintiffs' bullying allegations, indicates that D.V. had no anxiety or depression. T.V. Dep. Exh. 26. Quite simply, no reasonable jury could conclude from the record that D.V. was subject to severe or pervasive sexual orientation discriminatory mistreatment.

While plaintiff relies on L.W., the facts in that case are clearly distinguishable from this case. In L.W., L.W. was subject to continuous taunting, bullying and harassment by other students over several years. Further, L.W. was subject to homosexual epithets such as "gay," "homo" and "fag" almost daily which eventually resulted in physical aggression and molestation. 189 N.J. at 389. L.W.'s situation is plainly different from what D.V. experienced.

It is of course true that plaintiffs complained about other instances of bullying aside from the one incident in class where D.V. was called gay. However, D.V.'s claim is limited to sexual orientation bullying and not general bullying. There is no

evidence from which to infer that the other bullying directed to D.V. was caused by his perceived sexual orientation. To make such an inference as plaintiff argues would be pure speculation. See Thomas, g/a/l K.T. (a Minor) v. East Orange Bd. of Educ., 998 F. Supp. 2d 338, 348-49 (D.N.J. 2014)(the fact that the plaintiff was bullied does not in and of itself indicate that the plaintiff was bullied because she was a girl). Further, conclusory statements, conjecture and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

Although the statements made by the school psychiatrist may have been insensitive, it would be pure speculation to infer that her attitude pervaded the District. In addition, plaintiffs have not presented evidence that the psychiatrist had supervisory responsibilities for handling or investigating harassment, intimidation or bullying complaints. Nor is there evidence that the psychiatrist supervised or disciplined school personnel such that she was an "appropriate person" who could subject the District to liability. See Warren ex rel. Good v. Reading School Dist., 278 F.3d 163 (3d Cir. 2012)(school guidance counselor was not "appropriate person" whose knowledge could have subjected school district to liability). The jury will not be permitted to speculate that but for the psychiatrist

the isolated sexual orientation bullying that D.V. experienced would not have occurred.

In addition to the discussion above, there is another reason summary judgment will be entered in the District's favor on D.V.'s sexual orientation bullying/discrimination claim. That is, the jury cannot help but find that the District reasonably addressed the one reported sexual orientation/bullying incident. Amongst the factors to consider to determine if the District acted reasonably to prevent harassment are the ages of the involved students, development and maturity levels, school culture and atmosphere, rareness or frequency of conduct, duration of harassment, extent and severity of the conduct, whether violence was involved, effectiveness of the school district's response, the consideration of alternative responses and the swiftness of the school's reaction. George v. Board of Educ. of the Tp. of Millburn, 34 F. Supp. 3d 442, 457 (D.N.J. 2014). To be candid, the record is not developed as to all these factors. However, the record that exists does not permit a jury to reasonably conclude that the District did not act reasonably to end the sexual orientation harassment directed to D.V. Soon after the complaint was brought to its attention the District interviewed the allegedly involved students and teacher, it conducted an HIB investigation, and it promptly responded to T.V.'s complaints. The record does not reflect there is anything

else the District could have reasonably done to address plaintiffs' complaint other than what it did. In fact, plaintiffs have not pointed to one action the District did not take that it should have taken. Further, the effectiveness of the District's actions is demonstrated by the fact that after the one incident in class no other sexual orientation bullying of D.V. was reported to the District.[19] The school psychiatrist's comments at the May 16, 2012 meeting are a "red herring." She played no part in the relevant investigation and her ill-advised comments were essentially ignored.[20]

The Court is not insensitive to plaintiffs' concerns. The Court does not doubt for a moment that plaintiffs sincerely believe their sexual orientation bullying claim is meritorious. Plaintiffs are to be commended for working so hard for D.V.'s welfare, especially since by all accounts he is doing well in his current placement. However, the evidence in the record is not sufficient to make out an actionable sex discrimination

---

[19] Plaintiffs have not cited, nor did they argue, that the District's policies or training was deficient.

[20] There are stray comments in the record about other bullying incidents. B.V. Dep. 82; D.V. Dep. 42:18-42:20. However, plaintiffs do not rely on this testimony in their Briefs. Further, a court need not adopt a version of facts if the facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). Even in the face of such evidence summary judgment is still appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

claim and, therefore, summary judgment will be entered in defendants' favor on D.V's claim.[21]

### 4.   NJLAD Retaliation Claim as to the District and DeLape (Count Four)

In Count Four, B.V. o/b/o D.V., asserts a NJLAD retaliation claim against the District and DeLape similar to the claim in Count One. Plaintiffs allege they were retaliated against because of their advocacy for D.V. in violation of N.J.S.A. 10:5-12(d). Similar to retaliation claims under the Rehabilitation Act, ADA and §1983, in order to make out a retaliation claim under the NJLAD it is necessary that there be a causal link between the protected action and the alleged adverse action. Young, 385 N.J. Super. at 466-67; Barroso v. Lidestri Foods, Inc., 937 F. Supp. 2d 620, 630 (D.N.J. 2013). For the same reasons the Court grants summary judgment as to plaintiffs' retaliation claim in Count One, the Court will grant summary judgment as to the NJLAD retaliation claim in Count Four. Simply put, there are no facts in the record from which a jury can reasonably infer or conclude there was a causal link between plaintiffs' educational advocacy and the calls to DYFS.

### 5.   Title IX Discrimination Claim as to the District (Count Five)

---

[21]   To repeat, this Opinion does not address T.V.'s sex discrimination claim. T.V.'s claim stands on a different footing than D.V. in view of Jared Owen's testimony that it was his impression from talking with Lavell that Lavell was "very, very adamant that [there] had to be a problem because [T.V.] was gay." Dep. 72:5-17.

In Count Five of their complaint, B.V. o/b/o D.V, asserts a Title IX sex discrimination claim against the District based on D.V.'s sexual orientation. The first issue to address in this regard is whether Title IX's prohibition of severe and pervasive sexual harassment includes same-sex sexual harassment. For the same reasons set forth in Judge Irenas's August 7, 2013 Opinion (see 2013 WL 4039022, at **9-10), the Court accepts that Title IX encompasses same-sex sexual harassment.

Judge Irenas's Opinion also sets forth what must be proven to establish a student-to-student sexual harassment claim under Title IX. Id. at *9. In order to be liable a school district must be "deliberately indifferent to sexual harassment, of which [it has] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis as Next Friend of LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 650 (1999). Deliberate indifference takes place when a school district official "is advised of a Title IX violation [and] refuses to take action[.]" Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998). Thus, deliberate indifference requires "actual knowledge," 2013 WL 4039022, at *10; see also Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 360 (3d Cir. 2005)(defining deliberate indifference as "an official decision by the recipient not to

remedy the violation"). There can be no Title IX liability if a recipient of federal funds responds to known peer harassment in a manner "that is not clearly unreasonable." <u>Davis v. Monroe County Bd. Of Educ.</u>, 526 U.S. 629, 648-49 (1999).

For the same reasons summary judgment will be awarded on D.V.'s NJLAD sex discrimination claim against the District, judgment will be entered for the District on D.V.'s Title IX claim. For the reasons already discussed, the evidence does not support a finding that the sexual orientation insults directed to D.V. were severe or pervasive. The fact of the matter is that only two incidents possibly occurred, only one of which was reported to the District. Further, there is no evidence the District was "deliberately indifferent" to plaintiffs' complaints as it did not refuse to take action in response to the complaints. In fact, the evidence shows the District's attempts to investigate the one relevant incident brought to its attention was timely and not unreasonable. The fact that plaintiffs were not satisfied with the District's investigation is not determinative as to whether a Title IX violation occurred.

<u>Conclusion</u>

For all the reasons discussed above, summary judgment will be entered in defendants' favor as to all claims asserted by

D.V., by and through his Guardian B.V., and B.V. individually.

An appropriate Order will be separately entered.[22]

                                               s/Joel Schneider
                                               JOEL SCHNEIDER
                                               United States Magistrate Judge

Dated: March 29, 2017

---

[22] Due to the Court's rulings there is no need to decide if plaintiffs' claims are barred by the Settlement Agreement they signed to end their administrative claim.