IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| THOMAS VANDERGRIFT,<br><br>                Plaintiff,<br><br>  v.<br><br>PENNSAUKEN SCHOOL DISTRICT, et al.,<br><br>              Defendants. | Civil No. 12-7646 (JS) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendants' "Motion for Settlement Enforcement" [Doc. No. 275] and "Cross Motion for Settlement" [Doc. No. 276].[1] Both motions ask for the same relief, i.e., an Order enforcing an oral settlement agreement with plaintiff Thomas Vandergrift that was memorialized "on the record" on October 19, 2017.[2] The Court received plaintiff's response [Doc. No. 286], held a conference and heard oral argument on November 30, 2017, and held an evidentiary hearing and oral argument on

---

[1] The two sets of moving defendants are the Pennsauken School District ("Pennsauken") and Marty DeLape, and Chris Lavell and Holly Taylor.

[2] All references to "plaintiff" refer to Thomas Vandergrift ("T.V.") unless otherwise noted. References to "plaintiffs" shall refer to the three original plaintiffs.

1

December 20, 2017.[3] For the reasons to be discussed, defendants' motions are granted.

## Background

This case has a long and tortured history, all of which the parties know in detail. The Court will briefly summarize the relevant background. The Court incorporates by reference the summary set forth in its Opinion granting defendants' earlier summary judgment motions directed to then plaintiffs D.V. and B.V. See D.V. v. Pennsauken Sch. Dist., 247 F. Supp. 3d 464 (D.N.J. 2017).

The original complaint in the case was filed on December 13, 2012. An amended complaint was filed on September 21, 2013. The original named plaintiffs were D.V., by and through his Guardian, B.V., B.V. individually, and Thomas Vandergrift. D.V. is a minor with a learning disability and autism. D.V. lived with his paternal grandmother and legal guardian B.V. T.V. is D.V.'s uncle and is gay. At all relevant times T.V. acted as an educational advocate for D.V. with the Pennsauken School District. The claims in the case arise out of plaintiffs' educational advocacy and alleged sexual orientation bullying of D.V. In addition to the Pennsauken

---

[3] Plaintiff presented testimony from himself and his "partner," Clayton Fioravanti. References to "Tr.1" refer to the transcript from the October 19 hearing. References to "Tr.2 refer to the November 30 hearing. References to "Tr.3" refer to the December 20 hearing.

School District, the defendants in the case are Ms. Marty DeLape, the District's Director of Special Education, Chris Lavell, D.V.'s case manager, and Holly Taylor, the District's social worker. Lavelle and Taylor were members of D.V.'s child study team.

Insofar as plaintiff's claims are concerned, the key events occurred at an August 18, 2011 meeting to address D.V.'s Individualized Education Plan. At the meeting D.V.'s grooming habits were discussed and T.V. mentioned he went into the shower three times with D.V. and showed him how to wash. The next day Taylor and Lavelle called the New Jersey Division of Youth and Family Services ("DYFS") and reported that T.V. showered with D.V. Giving plaintiff the benefit of all reasonable inferences, Lavelle mentioned T.V. was gay or words to this effect. After DYFS initially decided not to take any action, Taylor and Lavelle called DYFS back to urge them to do something. The next day DYFS visited D.V.'s home to investigate if D.V. was subject to inappropriate touching by T.V. DYFS's investigation concluded nothing untoward had occurred. In addition to this incident, it was alleged D.V. was bullied at school.

According to T.V.'s original attorneys, during the course of the case T.V. threatened and harassed counsel. Although counsel moved to withdraw for all plaintiffs, the Court only granted the motion as to T.V. The Court also severed and stayed T.V.'s claims from those of D.V. and B.V. On March 29, 2017, the Court granted

3

all defendants' motions for summary judgment directed to the claims of D.V. and B.V. After this decision T.V.'s claims were activated. At T.V.'s request the Court delayed the prosecution of the case while T.V. searched for a new lawyer. Matthew B. Weisberg, Esquire, entered his appearance for T.V. on July 13, 2017. [Doc. No. 233]. By that time all defendants had filed motions for summary judgment. Although Weisberg's appearance was entered on the docket, Gary Schafkopf, Esquire, appeared in court to represent T.V. with plaintiff's consent.

On October 20, 2017, the Court scheduled trial on December 4, 2017 [Doc. No. 272]. Not wanting to delay trial, the Court held the Final Pretrial Conference before the outstanding motions for summary judgment were decided. At the same time the parties were preparing for trial, they were apparently discussing settlement amongst themselves.[4] When the parties appeared in Court on October 19, 2017 for the Final Pretrial Conference, the parties continued their settlement discussions. Plaintiff's attorney, Michael Weisberg, Esquire, and Gary Schafkopf, Esquire, along with plaintiff's partner, Clayton Fioravanti, were present in person. Plaintiff was not present in person but was available by phone while he was resting in England. Schafkopf and Fioravanti both

---

[4] The parties are obviously aware that throughout the history of the case the Court undertook monumental efforts to assist the parties to settle. Countless settlement conferences and discussions were held.

spoke to plaintiff during the negotiations. Later on the afternoon of October 19, the parties announced to the Court they agreed to settle. The parties then requested to put the essential terms of the settlement "on the record." Although T.V. was not present in person, he was present via telephone when the essential settlement terms were put on the record. This is reflected in the October 19, 2017 transcript ("Tr.1"), Doc. No. 273.[5] After the October 19 conference, defendants forwarded a Release to plaintiff to execute. Over the course of the next month defense counsel made changes to the Release that plaintiff's counsel suggested. Eventually, however, plaintiff's counsel advised defense counsel that plaintiff changed his mind about settling the case and would not sign the release. Defendants then filed the motions before the Court seeking to enforce the parties' oral settlement agreement that was put on the record on October 19, 2017. On November 30, 2017, the Court held a conference with the parties to understand why the settlement was not finalized at which it heard oral argument. On December 20, 2017, the Court held oral argument and an evidentiary hearing on defendants' motions.

Plaintiff makes several arguments in opposition to defendants' motions. Plaintiff argues: (1) he did not think his

---

[5] Plaintiff concedes the transcript reflects that he only expressed two objections to the settlement terms the parties summarized. Plaintiff's objections are moot because defendants agreed to plaintiff's terms.

oral agreement was binding, (2) he is not bound by his attorney's statements, (3) he could not hear what was discussed when he agreed to settle on October 19, (4) he was under duress when he agreed to settle, and (5) the parties did not settle because the agreement was subject to the approval of the Pennsauken Board of Education. Not unexpectedly, defendants disagree with plaintiff. Defendants also point out that plaintiff admits all the facts that compel that their motions be granted. For all the reasons to be discussed, the Court rejects all of plaintiff's arguments and will grant defendants' motions.

## Discussion[6]

### 1. Law Regarding Oral Settlement Agreements

The key issue the Court has to decide is whether T.V. entered into a binding oral settlement agreement with defendants. Unfortunately, it is not unusual for a party to attempt to back out of a settlement agreement he or she orally entered into, with or without the assistance of counsel or the Court. This Court has written several decisions on the issue, most recently in Paredes

---

[6] A motion to enforce a settlement agreement is generally treated as the same standard as a motion for summary judgment. Natale v. E. Coast Salon Servs., Inc., C.A. No. 13-1254 (NLH), 2016 WL 659722, at *2 (D.N.J. Feb. 17, 2016). As discussed herein, there are almost no disputed facts relevant to the underlying issues. This is true because plaintiff admits all the facts in defense counsel's Certification in support of defendants' motions. See discussion infra. As to any disputed facts, the Court's findings are reflected in this Opinion.

v. City of Atlantic City, C.A. No. 15-2929 (JBS/JS), 2016 WL 2354568 (D.N.J. May 2, 2016)(enforcing an oral settlement agreement plaintiffs' attorney entered into with the defendants). The general legal principles the Court has to apply are fairly straightforward and will be summarized.

The construction and enforcement of the parties' alleged settlement agreement is governed by principles of New Jersey contract law. Plymouth Mutual Life Ins. Co. v. Illinois Mid-Continent Life Ins. Co. of Chicago, Ill., 378 F.2d 389, 391 (3d Cir. 1967); Pacific Alliance Grp. Ltd. v. Pure Energy Corp., C.A. No. 02-4216 (DRD), 2006 WL 166470, at *2 (D.N.J. Jan. 23, 2006). Under New Jersey law a settlement agreement between parties to a lawsuit is a separate and independent contract from the underlying dispute. Pacific Alliance, 2006 WL 166470, at *2 (citation omitted). "The burden is on the moving party [in this case defendants] to establish that the parties entered into a contract of settlement." LNT Merch. Co. v. Dyson, Inc., C.A. No. 08-2883 (SRC), 2009 WL 2169236, at *2 (D.N.J. July 21, 2009)(citing Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997)); United States v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997). A settlement agreement is a form of a contract and may be enforced even if it is not in writing. Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983)("That the agreement to settle was orally made is of no consequence[.]").

7

New Jersey public policy favors settlements of litigation. See Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). However, notwithstanding the policy favoring settlements, a settlement "should not be enforced where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." McDonnell v. Engine Distributors, C.A. No. 03-1999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007) (citation and quotation omitted).

In order to have an enforceable settlement there "must be a 'meeting of the minds' for each material term to an agreement." Pacific Alliance, 2006 WL 166470, at *3 (citing Sampson v. Pierson, 140 N.J. Eq. 524 (N.J. Ch. 1947)). "A meeting of the minds occurs when there has been a common understanding and mutual assent of all the [material] terms of a contract." Knight v. New England Mut. Life Ins. Co., 220 N.J. Super. 560, 565 (App. Div. 1987). The meeting of the minds requirement is an essential element to the valid formation of all contracts. Am. Furniture Mfg. Inc. v. Value Furniture & Mattress Warehouse, 2009 WL 88922, at *2 (N.J. Super. Ct. App. Div. Nov. 18, 2008). "[P]arties create an enforceable contract when they agree to the essential terms and manifest an intent that the terms bind them." Baer v. Chase, 392 F.3d 609, 619 (3d Cir. 2004).

8

Objective manifestations of intent are controlling when determining if there is a meeting of the minds. See Brawer v. Brawer, 329 N.J. Super. 273, 283 (App. Div. 2000)(citation omitted)("A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested."); Leitner v. Braen, 51 N.J. Super. 31, 38 (App. Div. 1958)("The phrase, 'meeting of the minds,' can properly mean only the agreement reached by the parties as expressed, i.e., their manifested intention, not one secret or undisclosed, which may be wholly at variance with the former.").

As noted, a settlement agreement need not be reduced to writing to be binding. Pascarella, 190 N.J. Super. at 124. In fact, the execution of a release is a formality. "So long as the basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intent to be bound." Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992)(citation and quotation omitted); see also In re Columbia Gas System, Inc., 50 F.3d 233, 243 (3d Cir. 1995)(referring to the execution of a written settlement agreement or release as a "perfunctory" or "ministerial act"). Indeed, an oral settlement agreement need not even be made in the presence of the court to have legal effect. Pascarella, 190 N.J. Super. at 124; Lang v. Tewksbury Township, C.A. No. 10-2564 (MLC), 2012 WL 503677, at *2 (D.N.J. Feb. 15, 2012).

## 2. Plaintiff and Defendants Entered into a Binding Oral Settlement Agreement

It is unquestionably the case that a contract is enforceable if the parties agree on essential settlement terms and manifest an intention to be bound by those terms. Lightman, 988 F. Supp. at 458. This is what occurred here. As reflected in the October 19 transcript, the essential settlement terms the parties agreed to are as follows:

- Plaintiff would be paid $215,000. (Tr.1 9:4-9).[7]

---

[7] Plaintiff's testimony that he thought the settlement amount was $250,000 instead of $215,000 is incredulous and is not believed. First, after plaintiff acknowledged he could clearly hear what was being said, plaintiff confirmed he would be paid $215,000. Tr.1 9:4-9; see also Tr.1 11:9-13 (MR. GORMAN: All right. So we do agree that it is $215,000, a full waiver of claim. We agree to those terms, right? MR. VANDERGRIFT: Yes, that's correct.) Second, defense counsel spelled out the settlement amount for plaintiff and plaintiff confirmed he heard the amount:

MR. GORMAN: Okay. So there is a settlement between the parties. The first term of that settlement is that the District shall make a payment to plaintiff in the amount of $215,000. That is 2-1-5. Did you hear that, Mr. Vandergrift?

MR. VANDERGRIFT: Yes, I did.

Id. 9:4-9. Third, neither plaintiff or his counsel objected to the different versions of the parties' release which listed the settlement amount as $215,000. Tr.3 75:14 to 76:11. Fourth, plaintiff's partner confirmed the settlement was for $215,000 and not $250,000. Id. 84:11-13; 85:3-5. It is therefore inconceivable that plaintiff did not know the settlement was $215,000 rather than $250,000.

- The plaintiff would waive all claims. (Id. 11:9-13)[8]

- A mutual non-disparagement agreement would be entered into. (Id. 11:13-15).

- Plaintiff's law firm would indemnify defendants as to any Medicare and Medicaid lien. (Id. 12:12-17).

- Defendants will satisfy the attorney's lien of plaintiff's first attorneys (Reisman, Carolla & Gran). (Id. 12:18-25).

At the October 19 hearing plaintiff expressed disagreement to only two terms. First, plaintiff insisted the parties agree to a mutual release. Id. 9:21-25 to 10:1-17. Second, plaintiff objected to dismissing the individual defendants as a settlement condition. Id. 13:3-25. At the conclusion of the October 19 hearing plaintiff made it clear he had no other objections to the settlement terms placed on the record.

> THE COURT: Mr. Vandergrift, is there anything you'd like to add?
>
> MR. VANDERGRIFT: Yes, my concerns with two of those things I do not agree with.
>
> THE COURT: Anything else?
>
> MR. VANDERGRIFT: No.

Id. 14:25 to 15:1-5. Plaintiff's two objections are moot because defendants agreed to plaintiff's terms. Defendants agreed to a mutual release and the individual defendants will not be dismissed

---

[8] The transcript reads: MR. GORMAN: All right. So we do agree that it is $215,000, a full waiver of claim. We agree to those terms, right? MR. VANDERGRIFT: Yes, that's correct. Tr.1 11:9-13.

before the case is formally dismissed. These terms are incorporated into the parties' Release.

Based on all available evidence, the Court finds the parties evinced a meeting of the minds and agreed on their essential settlement terms on October 19. In addition, the Court finds the agreed upon settlement terms are sufficiently definite to bind the parties. Therefore, defendants' motions will be granted. The fact the parties agreed to settle and summarize their essential settlement terms on the record is crystal clear in the October 19 transcript. When the Court called plaintiff on the phone it told him:

> Good afternoon, Mr. Vandergrift. We're on the record in your lawsuit, docket number 12-7646. It's the Court's understanding the parties have reached an agreement to settle the case, and that the parties want to put the essential terms of the settlement on the record. So that's what the purpose of this call was to you, Mr. Vandergrift. Obviously you're the plaintiff so you have to know what's going on.

Id. 3:14-21. (emphasis supplied). In addition, Pennsauken's counsel stated: "We're happy to report that we have resolved this matter. The essential terms are that . . . ." Id. 4:21-24. Later on when plaintiff was called a second time Pennsauken's counsel stated, "[s]o there's a settlement between the parties." Id. 9:4. To avoid any confusion defense counsel emphasized that although a written agreement would be signed in the future the parties' agreement would be put on the record:

> MR. GORMAN: Okay, let me make this clear. So nothing is
> being signed today. So what's gonna happen is we're just
> gonna state what we agreed to on the record, and then
> we're going to draft a document in consultation with
> your attorney who's here today in which the remaining
> issues will be ironed out.

Id. 10:21-25 to 11:1. The settlement was not contingent on a written settlement agreement even though it is true the parties contemplated a written agreement would be signed. See Ezekwo v. Quirk, C.A. No. 15-3167 (SDW)(LDW), 2017 U.S. Dist. LEXIS 199993, at *7 (D.N.J. Nov. 17, 2017)(citation omitted)(under New Jersey law parties are bound by a settlement agreement even absent a writing, as long as they agree orally to the essential terms).

### 3. Plaintiff's Opposition is Meritless

#### (a) Plaintiff Concedes the Facts that Compel the Granting of Defendants' Motion

Not only is plaintiff's written opposition to defendants' motion confusing, but plaintiff admits the facts that compel the result that defendants' motion be granted. Plaintiff admits the facts in defense counsel's Certification (Brett E.J. Gorman, Esquire) (Doc. No. 275-2) are true.[9] Thus, plaintiff admits the following facts:

---

[9] Plaintiff's written submission states: "Consistent with Plaintiff's undersigned counsel's Rule 11 obligations, Plaintiff by and through counsel cannot contest Defendants' factual certifications." See Plaintiffs' Memo. of Law at 1, Doc. No. 286. In addition, plaintiff's counsel stated at the November 30 conference, "I can't say that anything in their certification is incorrect[.]" Tr.2 5:6-7.

3. On October 19, 2017, Plaintiff's counsel and counsel for all Defendants attended what was scheduled to be a final pre-trial conference ("the October 19, 2017 conference") before the Honorable Judge Joel Schneider, U.S.M.J.

4. Before the October 19, 2017 conference began, plaintiff's counsel suggested that the parties discuss settlement.

5. Counsel for Plaintiff and Defendants engaged in lengthy settlement discussions, ultimately reaching an agreement ("the Agreement").

6. The terms of the Agreement were placed on the record before Judge Schneider.

7. Prior to the terms of the Agreement being placed on the record, Judge Schneider noted that "[i]t's the Court's understanding that the parties have reached an agreement to settle the case, and that the parties want to put the essential terms of the settlement on the record."

8. Although Plaintiff was not present in court, he participated telephonically.

9. At the time the agreement was entered into the record, Plaintiff's attorney of record, Matthew B. Weisberg, Esq. was not present, but Plaintiff was represented by an associate of Mr. Weisberg, Gary Schafkopf, Esq.

10. The parties agreed that Plaintiff would be paid $215,000.00 in exchange for dismissing his complaint and executing a general release; the written agreement would contain a mutual non-disparagement clause; Defendants would reach a separate agreement regarding the lien outstanding from Plaintiff's prior attorney; Plaintiff's law firm would indemnify Defendants for any existing Medicaid liens; and that the agreement was subject to approval by the Pennsauken Board of Education at its November meeting.

. . .

13. On the record, Plaintiff was asked if he understood and agreed to the material provisions of the Agreement.

14. Plaintiff stated that he understood them and agreed.

15. On October 30, 2017 at 3:30 P.M., I [defense counsel] sent Plaintiff's counsel a general release, which reflected the agreement entered into by the parties.

16. On November 9, 2017 at 12:38 P.M., counsel for Plaintiff responded to my [defense counsel] October 30, 2017 email with proposed changes.

17. Over the following week, counsel engaged in discussions regarding proposed changes.

18. Counsel for Defendants incorporated all of the changes requested by Plaintiff and discussed at the October 19, 2017 conference.

19. Defendants agreed to include a mutual release and that the individual Defendants would be parties to the written agreement and not dismissed from the action prior to settlement.

. . .

22. After incorporating all of the requested changes, on November 14, 2017, Defendants counsel sent a revised copy of the general release. Counsel also noted that "Defendants reviewed these requests and agree to make these changes with the understanding that these are the last changes to the agreement and Plaintiff's signature will follow. We are out of time to get this before the [Board of Education] for approval next week."

23. On November 14, 2017 at 8:16 PM, Plaintiff's counsel responded with yet another change to the agreement, which, like all of the other requested changes, was incorporated . . . into the written agreement.

24. On November 17, 2017 at 5:17 PM, Plaintiff's counsel emailed defendants counsel, writing "[Plaintiff's] not signing release . . ." Plaintiff followed that statement with a request to "kindly forward your proposed JPTO and trial submissions."

25. Plaintiff has provided no reason as to why he has not signed the release, which includes all of the terms he agreed to and incorporates all of the changes he has sought.

26. As of the date of this writing, the final proposed agreement contains all of the terms that were agreed to on the record before the Court, contains concessions by Defendants as to the remaining issues raised by Plaintiff on the record before the Court, and contains concessions by Defendants as to every other demand made by Plaintiff through the drafting of the Agreement. Consequently, the Agreement represents a meeting of the minds and, thus, a settlement between the parties.

27. On November 21, 2017, at its monthly meeting, the Pennsauken Board of Education voted to approve the written agreement. The signatures for the individual Defendants are forthcoming.

Because plaintiff concedes that the parties agreed to the essential terms of their settlement on the record on October 19, 2017, and plaintiff concedes that he was represented by counsel and that he understood and agreed to the settlement terms, the parties October 19, 2017 settlement agreement must be enforced.

      (b)    The Settlement was not Contingent on a Final Signed Written Agreement

Plaintiff argues there was no final settlement until a final written agreement was signed. Tr.2 11:9-23. Plaintiff is mistaken. Oral settlements are binding even when the parties contemplate the later execution of a formal document to memorialize their

undertaking. Holland v. New Jersey Resources Corp., C.A. No. 12-07858, 2013 WL 3288162, at *2 (D.N.J. June 28, 2013)(citation and quotation omitted); Finocchiaro v. Squire Corrugated Container Corp., C.A. No. 05-5154 (SRC), 2008 WL 305337, at *3 ("[A]n oral agreement as to the essential terms of a settlement is valid even though the parties intend to reduce their agreement to a formal writing at a later time"); Bowles v. New York Liberty, C.A. No. 11-3529 (ES), 2014 WL 7148916, at *2 (D.N.J. Dec. 15, 2014)(citation omitted)("If the negotiations are finished and the contract between the parties is complete in all its terms and the parties intend that it shall be binding, then it is enforceable, although lacking in formality and although the parties contemplate that a formal agreement shall be drawn and signed.").

Plaintiff's testimony that he did not think the settlement was binding until he signed a written release or settlement agreement (Tr.3 8:12-19) is not controlling. This is just a reflection of plaintiff's "buyer's remorse." At no time did plaintiff or his attorney state that the execution of a formal written document was a condition of settlement. Further, plaintiff acknowledged that he understood the essential settlement terms were being put on the record. If plaintiff or his attorney wanted the settlement to be contingent on a signed release they should have said so. "Under long-settled [contract] principles, the secret unexpressed intent of a party cannot be used to vary the

terms of an agreement." Domanske v. Rapid-American Corp., 330 N.J. Super. 241, 246 (App. Div. 2000). It would be contrary to New Jersey's policy in favor of negotiated settlements to permit a litigant to assert that at the time he or she settled the litigant had an intention not communicated to anyone else. Id. If this is permitted to happen, "[o]ther parties to the litigation would have no realistic way to defeat that newly-stated assertion." Id. Like U.F.C.W Local 56 Health & Welfare Fund v. J.D.'s Mkt., C.A. No. 03-5026 (RBK), 03-5027 (FLW), 04-4194 (FLW), 2006 U.S. Dist. LEXIS 94882, at *13-14 (D.N.J. May 26, 2006), "[s]ince the parties had reached agreement on all the essential terms of the settlement, the fact that [plaintiff] subsequently refused to execute a final written settlement agreement will not prevent enforcement of the settlement."

Plaintiff argues his settlement with defendants is void because defendants did not include in the release twelve (12) non-economic terms supposedly discussed in the past. This argument is rejected because plaintiff and his attorney did not include these as essential terms when the terms of the settlement were put on the record on October 19. The fact that plaintiff wanted defendants to agree to these terms is irrelevant and not determinative to whether defendants' motions should be granted. As noted, the secret unexpressed intent of a party does not vary the terms of a settlement agreement. Domanske, 330 N.J. Super. at 246.

(c)  Plaintiff is Bound by his Attorney's Statements

If plaintiff argues he is not bound by his attorney's statements regarding indemnification or other obligations he is mistaken.[10] On October 19, plaintiff originally did not agree that he would indemnify defendants from Medicare and Medicaid liens. However, the issue was agreed to after plaintiff's counsel stated as follows:

MR. SCHAFKOPF: We're agreeing to indemnify.

MR. GORMAN: Okay, all right, well, it sounds as if the attorneys have agreed—are you agreeing to that?

MR. SCHAFKOPF: Yes.

Tr.1 12:8-11. Plaintiff agreed to this arrangement:

MR. GORMAN: Okay, so the law firm will then indemnify defendants as to the Medicare and Medicaid liens. . . .

MR. VANDERGRIFT: Okay, yes, thank you.

Id. 12:12-17. The Court finds these statements to mean that only the Weisberg Law Firm shall be responsible for the indemnification obligation in paragraph 12 of the Release. Plaintiff objected to his personal obligation to indemnify on October 19 but did not object to his attorneys' agreement to indemnify.

Where a client's words or conduct communicated to its adversary creates a reasonable belief that the attorney possesses authority to conclude a settlement, the settlement may be enforced.

---

[10] The indemnification provision is set forth in paragraph 12 of the attached Release.

Amatuzzo, 305 N.J. Super. at 475. This certainly occurred here. Further, "[u]nder New Jersey law, settlement stipulations made by attorneys when acting within the scope of their authority are enforceable against their clients." Ezekwo, 2017 U.S. Dist. LEXIS 199993, at *9 (citation and quotation omitted). Plaintiff's counsel was clearly acting on plaintiff's behalf at the October 19 hearing and, therefore, plaintiff is bound by his statements.

> (d) Plaintiff Could Hear and Understand Everything that was Said on October 19

The Court does not find credible and discounts plaintiff's testimony that he could not clearly hear or understand what was said on October 19. Tr.3 6:25 to 7:1; 21:2-22. To the extent plaintiff argues he could not hear or understand what occurred on October 19, 2017, he is engaging in "Monday morning quarterbacking." Plaintiff unquestionably could hear and understand what was going on. Plaintiff's attorney acknowledged he spoke with plaintiff on the phone over several hours that day about the settlement. ("I was speaking with [plaintiff] for hours back and forth trying to negotiate the settlement." Tr.2 4:21-24.) Further, when plaintiff expressed some trouble hearing the proceedings on the phone he was immediately called back and put on the courtroom's loudspeaker.

THE COURT: Mr. Vandergrift, hang up. We're gonna call you right back.

MR. VANDERGRIFT: Yes, okay.

. . .

MR. VANDERGRIFT: Hello.

DEPUTY CLERK: Mr. Vandergrift.

MR. VANDERGRIFT: Yes.

DEPUTY CLERK: This is Nick, courtroom deputy for
Judge Schneider right now. Can you hear me clearly?

MR. VANDERGRIFT: Yes, I can.

DEPUTY CLERK: Excellent.

MR. GORMAN: Can you hear me, Mr. Vandergrift?

MR. VANDERGRIFT: Yes, now I can. Thank you.

Tr.1 8:12-25. Having confirmed that he could "clearly" hear what
was being said, plaintiff's contrary testimony on December 20,
2015 is not believable. Further, the Court was present when
plaintiff was tied into the Court's loudspeaker and all discussions
were crystal clear. Moreover, after being tied into the loudspeaker
plaintiff never mentioned he had any trouble hearing what was going
on. Therefore, plaintiff's testimony on December 20 that he could
not clearly hear what was being said is not credible and is
rejected.

> (e) Plaintiff was not Under Duress when he Agreed
>     to Settle

Plaintiff is apparently arguing that he was under duress when
he agreed to settle. Plaintiff's argument is specious. Plaintiff's
burden of proof to show that he agreed to settle under duress is

a heavy one. A court may set aside a settlement agreement only if a party can show, by clear and convincing evidence, that the agreement was achieved through "coercion, deception, fraud, undue pressure, or unseemly conduct." Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 475 (App. Div. 2009)(quoting Peskin v. Peskin, 271 N.J. Super. 261, 276 (App. Div. 1994)); see also Nolan, 120 N.J. at 472.[11] Undue pressure constituting duress does not require an actual threat, nor does it require that the defendant engage in unlawful conduct. Rubenstein v. Rubenstein, 20 N.J. 359, 365-67 (1956); Smith v. Estate of Kelly, 343 N.J. Super. 480, 499 (App. Div. 2001). For a court to find duress, however, the plaintiff must suffer "a degree of constraint or danger, either actually inflicted or threatened and impending, sufficient in severity or in apprehension to overcome the mind or will of a person of ordinary firmness." Rubenstein, 20 N.J. at 365; Smith, 343 N.J. at 499. Where a party claims to have suffered duress in the form of moral compulsion or psychological pressure, the pressure must be

---

[11] In United States v. Askari, 222 Fed. Appx. 115, 2007 WL 1073698 (3d Cir. 2007)(quoting In re Jobes, 108 N.J. 394, 408 (1987)), the court wrote:

> [clear and convincing evidence] produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth to the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact finder] to come to a clear conviction without hesitancy of the truth of the precise facts at issue.

22

"so oppressive under given circumstances as to constrain one to do what his free will would refuse." Rubenstein, 20 N.J. at 367; Smith, 343 N.J. at 499. Courts apply both a subjective and an objective standard to determine whether duress exists. Smith, 343 N.J. at 499. From a subjective standpoint, the pressure must be of a type sufficient to effect the actual control of a party's will. Rubenstein, 20 N.J. at 366-67; Smith, 343 N.J. at 499. Additionally, a court must find that the pressure in question was of sufficient intensity that "a person of reasonable firmness in plaintiff's situation would have been unable to resist." Smith, 343 N.J. at 499 (quotations omitted).

No credible evidence exists to support a duress argument. At all relevant times plaintiff was able to consult with his attorneys. Further, there is no evidence plaintiff was threatened or coerced in any fashion. The fact that plaintiff was of sound mind and composed is evidenced by the rational comments he made on the record. Plaintiff's testimony that he was in a "vortex" (Tr.3 73:8 to 74:4) is spurious. Nowhere is this reflected on the record. In short, to the extent plaintiff argues he was under duress when he agreed to settle, the argument is frivolous. "Absent a demonstration that a settlement was procured by fraud, or some similarly compelling reasons," New Jersey courts are reluctant to set aside settlements. Brundage v. Estate of Carambio, 195 N.J.

575, 613 (2008). Plaintiff has not presented any credible evidence this occurred.

What occurred here is a classic case of "buyer's remorse." Although plaintiff and his attorney agreed to the essential settlement terms on October 19, over a month later plaintiff decided he did not want to settle. It is evident plaintiff had second thoughts about the settlement sum he agreed to accept on October 19.[12] Unfortunately for plaintiff, however, he is bound by his October 19 agreement.[13]

An instructive analogous case is Bowles v. New York Liberty, et al., C.A. No. 11-3529 (ES), 2014 WL 7148916 (D.N.J. Dec. 15, 2014). In that case plaintiff fell at Madison Square Garden and settled her lawsuit for $175,000 on the record before a Magistrate Judge. Plaintiff later refused to sign a Release and insisted she

---

[12]  THE COURT: Can you tell me what the issues are from your client's perspective that he objects to:

MR. SCHAFKOPF: Well, it starts with, you know, what he's— basically the position he'll be in financially after the fact. . . . [H]e just doesn't walk away with that much money. . . .

THE COURT: Okay, so the first objection he [plaintiff] has is to the amount of the settlement, is that correct?

MR. SCHAFKOPF: Yes, Your Honor.

Tr.2 5:20-25 to 6:3-5.

[13] The fact that plaintiff's attorney negotiated the terms of the parties' release between October 19 and November 17, 2017, demonstrates plaintiff knew he entered into a binding settlement with defendants.

24

would only settle for $600,000. Like here, the defendants filed a motion to enforce the settlement. The Court granted the motion holding that the plaintiff agreed to settle for $175,000, even though she later realized she needed more money to cover her costs. Relying on Pascarella, 190 N.J. Super. at 125, the Court ruled that it would not inquire into the adequacy of the settlement consideration unless there was deception, lack of independent advice, or abuse of confidential information, or where the inadequacy of consideration is "shocking to the conscience." Id. at *4-5. None of this exists here. At all relevant times plaintiff was represented by competent counsel and the parties engaged in arm's length good faith settlement negotiations. Like Bowles, plaintiff cannot turn away from an agreed upon settlement. As noted in Pascarella, 190 N.J. Super. at 126, "[t]he bargain clearly was struck. If later reflection were the test of the validity of such an agreement, few contracts of settlement would stand."

(f) Board Approval was a Condition Subsequent that did not Void the Parties' Settlement

To the extent plaintiff argues the parties never agreed to settle because the settlement was contingent on formal approval of Pennsauken's Board of Education which has been given, he is wrong. As is the case with most governmental entities, formal approval of a settlement must be given by a Board. However, this contingency does not prevent a binding settlement. Formal Board approval was

25

a condition subsequent that could only divest a contract that already existed. In short, the necessity for Board approval did not void the parties' agreement. As explained in a leading authority:

A condition subsequent is a condition that, if performed or violated, as the case may be, defeats the contract, or one that, if not met by one party, abrogates the other party's obligation to perform. A condition subsequent presumes a valid contract and refers to a future event, which divests a preexisting contractual liability. Thus, a contract that is conditioned to become void on a specified event is one subject to a condition subsequent.

The fact that a promise is made depending on a condition subsequent does not affect its validity. A condition subsequent does not delay the enforceability of a contract, as it only preserves the possibility that a contract can be set aside later in time if a condition is not fulfilled. A condition subsequent, upon its happening, provides a party the option either to terminate the contract or not to terminate it. (Footnotes omitted).

17A C.J.S. Contracts '451.[14]

Given the history of the parties' settlement negotiations, the parties' statements at the October 19, 2017 conference, and plaintiff's admissions, it is clear the parties intended approval of Pennsauken's Board to be a condition subsequent. The parties' agreement was effective on October 19 and became voidable at the

---

[14] The Restatement of Contracts no longer uses the term "condition subsequent" and now refers to conditions subsequent as conditions. The Restatement of Contracts addresses an event that terminates a duty under a contract, which was formerly characterized as a condition subsequent. Id.

discretion of defendants only if the Board did not approve the settlement. The parties intended to be bound on October 19 to the essential settlement terms that were agreed upon. See Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 (3d Cir. 2010)("[J]udicial approval of a class action settlement is a condition subsequent to the contract and does not affect the legality of the proposed settlement agreement.")

## 4. The Terms of the Parties' Settlement

As noted, the parties agreed to settle the case even though plaintiff refuses to sign the General Release ("Release")[Doc. No. 275-3, pp. 57-65] the parties negotiated. In order to clarify the precise terms of the parties' final settlement, the terms will be specifically set forth herein. The Court agrees with plaintiff that some terms in the Release were not agreed to and some are moot. Using the Release as a reference document the following terms will summarize the parties' final settlement agreement and release:

1. The payment obligation in paragraph 1(c) is clarified due to plaintiff's failure to sign the Release. Payment shall be made within forty-five (45) days after defendants receive executed W-9 forms and a Child Support Judgment Search. These documents shall be received by defendants by January 15, 2018.

2. Paragraph 5 is removed. ("No Admission of Liability"). This term was not agreed to on the record and plaintiff objects.

3.      The second sentence of Paragraph 6 ("Entire Agreement") is removed. This term was not agreed to on the record and plaintiff objects.

4.      Paragraph 7 is removed ("Confidentiality"). This term was not agreed to on the record and plaintiff objects. In any event, since the terms of the parties' settlement are already on the public docket, confidentiality is a moot point.

5.      The first two paragraphs of Paragraph 12 ("Liens – Indemnify and Hold Harmless") remain part of the settlement except, however, only the Weisberg Law Firm agrees to indemnify and not plaintiff. As discussed herein, the Weisberg Law Firm agreed to indemnification after plaintiff objected. The third paragraph (hold harmless language) is removed. This term was not agreed to on the record and plaintiff objects.

6.      Paragraph 13 ("Medicare Set-Aside") is removed. This term was not agreed to on the record and plaintiff objects.

7.      Sub-part (b) on page 8 of 9 is removed. This term was not agreed to on the record and plaintiff objects.

8.      Sub-part (f) on page 8 of 9 is removed. Becaus plaintiff refuses to sign the Release, this sub-part is moot.

The Court is aware there is some language in the parties' final Release that was not specifically discussed on October 19. However, these are non-essential routine terms included in a release or settlement agreement. As noted in Ezekwo, supra, "if the agreement is silent as to a circumstance which thereafter arises, the parties may not be left without an Agreement. So long as the parties intended to be bound by their agreement and a court is able to fill any gaps necessary to achieve a fair result, the contract may be modified by the addition of a reasonable term."

2017 U.S. Dist. LEXIS 199993, at *12-13 (quoting Grand Cent. Props. L.L.C. v. Sudler Tinton Falls, L.P., 2013 N.J. Super. Unpub. LEXIS 544, at *9 (App. Div. March 11, 2013)).

Conclusion

For all the foregoing reasons, defendants' motions to enforce their settlement agreement with plaintiff Thomas Vandergrift will be granted.

## O R D E R

Accordingly, it is hereby ORDERED this 22nd day of December, 2017, that the "Motion for Settlement Enforcement" [Doc. No. 275] filed by the Pennsauken School District and Marty DeLape, and the "Cross Motion for Settlement" [Doc. No. 276] filed by Chris Lavell and Holly Taylor are GRANTED; and it is further

ORDERED that the marked-up version of the parties' General Release attached to this Order shall constitute the final terms of the parties' Settlement Agreement and Release. The attachment hereto reflects the rulings in the Court's Memorandum Opinion and Order. The attached General Release shall be in full force and effect as of the date this Opinion and Order is entered even though it is not signed by the parties. The parties shall comply with all obligations stated therein. To the extent not specifically set forth in the Release, defendants shall promptly satisfy the attorney's lien of Reisman, Carolla and Gran after plaintiff

returns the executed W-9 forms and Child Support Judgment Search; and it is further

ORDERED that defendants' payment obligation in paragraph 1(c) shall be made within forty-five (45) days after defendants receive executed W-9 forms and Child Support Judgment Search. These documents shall be received by defendants by January 15, 2018. In the event plaintiff does not timely return these documents, defendants' settlement payment shall be deposited into the Trust Account of counsel for the Pennsauken School District to be distributed when the referenced documents are returned; and it is further

ORDERED that the Clerk of the Court shall close this file and mark it settled.

> s/Joel Schneider
> JOEL SCHNEIDER
> United States Magistrate Judge

Dated: December 22, 2017

# GENERAL RELEASE

THIS GENERAL RELEASE (hereinafter "this Release") is entered into by and between Thomas Vandergrift (hereinafter "Plaintiff") and the Pennsauken School District Board of Education, and its past and present officers, employees and agents and Marty DeLape, Chris Lavell, and Holly Taylor, (hereinafter "Defendant").

WHEREAS, Plaintiff, Thomas Vandergrift, filed a Complaint against Defendant in the United States District Court for the District of New Jersey, Camden Vicinage, entitled Thomas Vandergrift v. Pennsauken Board of Education, et al., bearing Civil Action No. 12-7646, and has asserted claims against the Defendant in connection with alleged events arising out of an IEP meeting on or about August of 2011.

WHEREAS, the parties settled all controversies between them, including Plaintiff's claims bearing Civil Action No. 12-7646, and any and all related claims which could have been asserted, whether they are presently known or unknown; and

WHEREAS, Defendant vigorously and wholly denies each and every allegation made by Plaintiff, and enters into this settlement for reasons other than the merits of Plaintiff's claims, including to avoid the cost of litigation; and

NOW, for and in consideration of the Agreements, covenants and conditions herein contained, the adequacy and sufficiency of which is hereby expressly acknowledged by the parties hereto; it is agreed as follows:

1.   Terms of Settlement:

(a)   The Defendant hereby agrees to pay Plaintiff the total settlement amount of TWO HUNDRED FIFTEEN THOUSAND DOLLARS and 00/100 ($215,000.00), said settlement amount being fully and completely inclusive of all attorney's fees and costs incurred by counsel for Plaintiff, with the exception of an additional payment made by Defendant in satisfaction of any and all attorney liens against Plaintiff to the law firm of Reisman, Carolla, and Gran;

(b)   Plaintiff agrees that, but for this General Release, he would not be entitled to the aforesaid payment and other terms of settlement described in the subsections under this paragraph;

(c)   The settlement amount shall be paid by the Defendant and/or its carriers in the form of one or more checks. Payment shall be made within forty-five (45) days of approval by the Pennsauken Board of Education.

(d)    Tax Consequences. The parties understand and agree that an IRS Form 1099 designated in a settlement amount as "other income" will be issued. Plaintiff agrees to assume full liability for applicable State, Federal and Local taxes that may be required by law to be paid with respect to any settlement of payment described herein. Plaintiff further agrees that in the event that the Internal Revenue Service or any other taxing authority deems any tax, interest, penalties or other amounts to be due from the Defendant with respect to this settlement, Plaintiff will fully and completely indemnify the Defendant for any sums the Defendant may be required to pay, including reasonable attorney's fees and costs. It is the intent of the parties that the payments in paragraph 1 (a) above will be the Defendant's total payments to or for the benefit of Plaintiff. Plaintiff acknowledges and agrees that he is solely and completely responsible for any tax obligations, liabilities, or consequences arising out of the execution of this General Release and the payment under paragraph 1. The Parties intend this payment to compensate Plaintiff for emotional distress and related injuries. Should it be determined that any portion of the payment described in paragraph 1 is taxable, Plaintiff shall be solely responsible for same. Plaintiff further agrees that he shall indemnify and hold harmless Defendant for any and all claims, liabilities or consequences arising out of any of her unsatisfied tax obligations or liabilities. Plaintiff acknowledges that neither Defendant, nor any of their representatives or attorneys, nor Plaintiff's attorney, has made any promise, representation, or warranty, express or implied, regarding the tax consequences of the payment under paragraph 1. Plaintiff agrees and understands that his attorney has instructed him to consult with an accountant or other tax professional regarding the tax treatment of the sums paid pursuant to this General Release;

(e)    Plaintiff, Thomas Vandergrift, certifies and warrants to the Defendant that he has no outstanding judgments for child support and that an appropriate judgment search has been conducted. Plaintiff agrees to provide a copy of said judgment search to the Defendant in accordance with the applicable statute as part of the settlement. In the event Plaintiff has outstanding child support judgments, Plaintiff hereby agrees that he will satisfy all such outstanding judgments out of the proceeds of this settlement and that he will fully and completely indemnify the Defendant for any sums the Defendant may be required to pay, including reasonable attorney's fees and costs, with respect to any such outstanding judgments; and

(f)    Plaintiff's allegations against the Defendant arise out of alleged conduct which he claims caused personal injury, infliction of emotional distress and other related damages.

2.     Dismissal of Action:  Plaintiff understands and agrees that Matthew Weisberg, Esquire, counsel for Plaintiff, will file the executed original of the Stipulation of Dismissal with Prejudice with the United States District Court for the District of New Jersey, Camden Vicinage, upon payment of the settlement amount and not before.  The Plaintiff understands and agrees that the terms of the aforesaid dismissal are expressly incorporated by reference within this General Release as if fully set forth herein.

3.     Release in Consideration for the Payment and the Consideration Provided for in This Agreement:  Plaintiff and Defendants personally and for their estates and/or heirs waives, releases and gives up any and all claims, demands, obligations, damages, including punitive damages, liabilities, causes of action and rights, in law or in equity, known and unknown, that they may have against any Party to this action, their officers, agents, representatives and employees (present and former), and its respective successors and assigns, heirs, executors and personal or legal representatives, based upon any act, event or omission occurring before the execution of this Release including, but not limited to, any events related to, arising from, or in connection with any Parties interactions with each other.  Plaintiff and Defendants specifically waive, release and give up any and all claims arising from or relating to or association with any Party based upon any act, event or omission occurring before the execution of this settlement, including but not limited to, any claim that was asserted or could have been asserted under any Federal and/or State statutes, regulations and/or common law, expressly including, but not limited, to any potential claim regarding:

(a)     The National Labor Relations Act;

(b)     Title VII of the Civil Rights Act of 1964;

(c)     Sections 1981 through 1988 of Title 42 of the United States Code;

(d)     The Employment Retirement Income Security Act of 1974;

(e)     The Immigration Reform Control Act;

(f)     The Americans with Disabilities' Act of 1990;

(g)     The Age Discrimination & Employment Act of 1967;

(h)     The Fair Labor Standards;

(i)     The Occupational Safety & Health Act;

(j)     The Family & Medical Leave Act of 1993;

(k)     The Equal Pay Act;

(l)     The New Jersey Law Against Discrimination;

(m) The New Jersey Minimum Wage Law;

(n) The Equal Pay Law for New Jersey;

(o) The New Jersey Worker Health & Safety Act;

(p) The New Jersey Family Leave Act;

(q) The New Jersey Conscientious Employee Protection Act;

(r) Any anti-retaliation provision of any statute or law;

(s) Any other federal, state or local, civil or human rights law or any other local, state or federal law, regulation or ordinance, any, provision of any federal state constitution, any public policy, contract, tort or common law, or any losses, injuries or damages (including back pay, front pay, liquidated, compensatory or punitive damages, attorney's fees and litigation costs);

(t) Any common law claims for negligence, assault, battery, infliction of emotional distress and any and all other common law claims arising out of this litigation;

(u) 42 U.S.C. § 1983, 1988; and

(v) Any and all claims under the New Jersey Constitution and/or the New Jersey Civil Rights Act.

4. <u>Attorney's Fees and Costs</u>: Plaintiff agrees that no amounts other than the payments to be made pursuant to paragraph 1 of this Release shall be sought by or owed to Plaintiff or his attorney in connection with this matter.

6. <u>Entire Agreement</u>: This Release contains the sole and entire Agreement between the parties hereto and fully supersedes any and all prior Agreements and understandings pertaining to the subject matter hereof.

No other promises or Agreements shall be binding unless in writing, signed by the parties hereto, and expressly stated to represent an amendment to this Release.

8.      Non-Disparagement:  The parties agree that they will not make demeaning, disparaging, and/or derogatory remarks to third parties regarding one another and/or any of their employees, officers, directors or family members in connection with this Settlement Agreement and/or the claims raised in this litigation, including, but not limited to, any and all social media statements or posts of any kind on any website or application such as, Facebook, YouTube, twitter or any website or application of any kind.

9.      No Future Employment:  Plaintiff further agrees and warrants that he will not apply to, or seek out employment with, Defendant, Pennsauken School District, or any of its affiliates, at any time after the effective date of this Agreement.

10.     Severability:  Plaintiff agrees that if any Court declares any portion of this Agreement unenforceable, the remaining portion shall be fully enforceable.

11.     Applicable Law:  This General Release shall be construed and interpreted in accordance with the laws of the State of New Jersey.  Plaintiff agrees that any action to enforce or interpret this Release shall only be brought in a Court of competent jurisdiction of the State of New Jersey or the Federal Courts of New Jersey.

12.     Liens – Indemnity and Hold Harmless:  Plaintiff agrees and represents that any and all Medicare, Social Security, hospital, medical insurance coverage subrogation claims and/or any and all other type of liens or interest that is and/or could be claimed by any person and/or entity, will be fully paid, satisfied and released from the settlement proceeds paid herein, or that the settlement proceeds will be held in trust, unless and until such time as said liens and/or claims have been fully paid, satisfied or released.

In this regard,                                    **Plaintiff's counsel's law firm,** Weisberg Law, agree to indemnify and hold harmless Pennsauken Board of Education, any and

all of their insurance carriers, attorneys and all others in privity with them, from any claim by, through and/or under Plaintiff including, but not limited to, any direct claim by Medicare and/or Social Security for reimbursement of any funds paid by them in any way relating to the injuries and claims arising from the accident in question.

14.     Medicare Information.   It is understood and agreed that the information provided below will be provided to The Centers for Medicare and Medicaid Services pursuant to The Medicare, Medicaid and SCHIP Extension Act of 2007.

15.     Destruction of Medical Records.     It is understood and agreed that within sixty (60) days of the entry of a final order dismissing this action, Defendants shall destroy any and all medical records in their possession regarding Plaintiff.

Full Name as it appears on your                    Social Security Number:
Social Security Card:

_____                    _____

Address:                                          Date of Birth:

_____

_____

**Medicare Health Insurance Claim**              Gender:
**Number (HICN)(if applicable):**

_____                          _____

16.      No Claims Permitted/Covenant Not To Sue: Plaintiff waives his right to file any charge or complaint on his own behalf and/or to participate as a complainant, a Plaintiff, or charging party in any charge or complaint which may be made by any other person or organization on his behalf, with respect to anything which has happened up to the execution of this Agreement before any Federal, State or Local Court or Administrative agency against the Defendant, except if such waiver is prohibited by law. Should any charge or complaint be filed, Plaintiff agrees that he will not accept any relief or recovery therefrom. Plaintiff confirms that no such charge, complaint or action exists in any forum or form other than the Complaint bearing Civil Action No. 12-7646, and covenant not to file any charge, complaint or action in any forum or form against the Defendant based upon anything which is encompassed by the terms of this Agreement. Except as prohibited by law, in the event that any such charge, complaint or action is filed by Plaintiff, it shall be dismissed with prejudice upon presentation of this Agreement and Plaintiff shall reimburse the Defendant for the cost, including attorney's fees, of defending any such action.

17.      Nonexclusivity of Remedies: The remedies provided for in the event any section of this Release is breached by the Plaintiff as discussed above shall not be construed to be exclusive and do not bar any other claims for relief, either at law or equity.

18.      Strict Adherence: The failure of the parties to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of the Agreement.

19.      No Assignment: No party to this Agreement may assign any of its benefits or delegate any of its duties thereunder without the express written consent of all other parties evidenced by a duly authorized and executed written instrument.

20.      No Waiver of Breach: The waiver of any provision of this Agreement shall not be construed or operate as a waiver of any subsequent breach.

21.    Effective Date:  This Release will become effective on the date on which it has been executed.

**BY SIGNING THIS AGREEMENT, _____, STATES THAT:**

a).    HE HAS READ IT;

c).    HE AGREES TO ABIDE BY ALL OF THEIR OBLIGATIONS IN SAID AGREEMENT;

d).    HIS ATTORNEY(S) NEGOTIATED THIS GENERAL RELEASE WITH HIS KNOWLEDGE AND CONSENT;

e).    HE HAS BEEN ADVISED TO CONSULT WITH HIS ATTORNEY(S) PRIOR TO EXECUTING THIS SETTLEMENT AGREEMENT AND RELEASE, AND HAS, IN FACT, DONE SO; AND

**PLEASE READ CAREFULLY.  THIS AGREEMENT HAS IMPORTANT LEGAL CONSEQUENCES.**

**[INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, Plaintiff has hereunto signed this Release the day and year below written.

DATED: _____

_____
,Plaintiff

SSN: _____

WITNESSED BY:

_____

STATE OF NEW JERSEY, COUNTY OF _____; ss.

I CERTIFY that on _____, 2017, _____, personally came before me and acknowledged under oath, to my satisfaction, that this person is named in and personally signed this document and signed, sealed and delivered this document as his or her act and deed.

_____
Notary Public

My Commission Expires:_____

DATED: _____

_____, Defendant
Marty DeLape

DATED: _____

_____, Defendant
Chris Lavell

DATED: _____

_____, Defendant
Holly Taylor

DATED: _____

_____, Board President
Nicholas Perry

DATED: _____

_____, Board Secretary
Noreen Boston
4822-2232-3282, v. 1

DATED: _____

*Page -9- of -9-*